209 So.2d 388

**J. R. WATERS et al.**

v.

**CITY OF BIRMINGHAM et al.**

**6 Div. 490.**

Supreme Court of Alabama.

March 7, 1968.

Rehearing Denied May 2, 1968.

Winston V. McCall and Pritchard, McCall & Jones, Birmingham, for appellants.

J. M. Breckenridge, Birmingham, for City of Birmingham.

Romaine S. Scott, Jr., J. Robt. Fleenor, John H. Morrow and Bradley, Arant, Rose & White, Birmingham, for Methodist Hospital.

HARWOOD, Justice.

The appellants here were the complainants below in a declaratory proceedings in equity. They sought to have declared invalid Ordinance 391 G which undertook to amend the Zoning District Map of the City of Birmingham as same appears in the General Code of the City of Birmingham of 1944, as amended.

The respondents were the Methodist Hospital, Inc., a Corporation, and the City of Birmingham.

The land affected and rezoned by Ordinance 391 G was owned by the Methodist Hospital, Inc., a Corporation and consisted of roughly 37 acres. Prior to the enactment of the ordinance this land had been designated as R 2 (single family district). The effect of the ordinance was to change this designation to B 2 (general business district).

After a full hearing the Chancellor entered a decree adjudging and decreeing that Ordinance 391 G was valid, and the complainants below perfected this appeal from such decree.

The facts deducible from the pleadings and evidence show that the complainants below are the owners of the Eastwood Mall Shopping Center, a developed shopping center complex of approximately 52 acres. This mall is directly across Oporto Avenue from the Methodist Hospital property on its eastern side, and is designated B 2.

On its southern side and across a road the Methodist Hospital property is bounded by an area which has been zoned in large part as B 1, and in lesser part as R 3 (multiple housing units.).

On the west of the property is a residential area. However, a ridge along the west of the property buffers this area from the residential property which would not be affected by a commercial development of the Methodist Hospital property. None of the residents of this area have joined in these proceedings.

On the north the Methodist Hospital property is bounded by U.S. Highway 78, a divided highway constituting the main highway to Atlanta. A 20 acre area immediately across Highway 78 and wider along Highway 78 than is the Methodist Hospital Property, has been zoned M 1, or light industrial.

Thus the Methodist Hospital property, zoned R 2 prior to the enactment of Ordinance 391 G, was in effect a residential peninsular intruding into an area zoned for commercial, or business, or multiple residence areas, the designation or zoning of such areas having occurred since the original comprehensive zoning.

It is also to be noted that property at the corners of Oporto Avenue and Montclair Road, only a short distance south of the property in question has been zoned B 2.

In the hearing below, M. J. Sasser, Director of Inspection Services for the City of Birmingham, testified as a witness for the appellants. After an investigation, he had

recommended that Ordinance 391 G not be passed. In his opinion there was sufficient property in the area already designated B 2. However, on cross examination Mr. Sasser testified he had not made any detailed study of the trade area nor did he make any survey along these lines, and his opinion would be altered if a survey showed there was not sufficient commercial property in the area. Mr. Sasser further testified that he does not consider the present designation of the hospital property (M 1, single family dwellings) to be a proper or suitable designation for the property.

The evidence also shows that the Zoning Advisory Committee of the City of Birmingham had recommended against rezoning the property of the Methodist Hospital.

Several other witnesses testified in appellants' behalf that in their opinions the property should not be rezoned and gave the factors entering into the formation of their opinions, such as traffic conditions, availability of commercial property in the area, and so forth.

The testimony of some of these witnesses is voluminous and in some respects rather tenuous because of the conditional basis of their opinions, though the opinions formed are to the effect that the Methodist Hospital property should not be rezoned.

On the other hand, the testimony of the witnesses for the appellees is also voluminous.

In the main, it is directed toward showing that former residential property in close proximity has been rezoned to commercial; a number of national concerns and thirty-five to forty lesser business concerns have expressed interest in locating on the hospital property if it should be rezoned; the hospital property though zoned residential has remained underdeveloped, and there has been no residential development along Crestwood Boulevard adjacent to the property nor in other nearby areas; City Stores (Lovemans) considers the hospital property as the "number one location in the City" for a suburban store and has had two trade surveys made.

Several additional factors were also put forth as to the desirability of rezoning the hospital property by witnesses for the appellees. Again, much of this testimony is tenuous. Mr. Frederick M. Robinson, a partner in Harland Bartholomew and Associates who work in the field of city planning and zoning, testified at great length. He listed factors against rezoning the hospital property and those in favor thereof. The following excerpt from his testimony is illustrative:

"Q Do you have a judgment—with factors in your judgment preponderant (preponderate)?

"A I cannot give a conclusive answer to that question unless and until I have studied and evaluated the kind of information that I have talked about. A decision of that order in my case would not be without points of merit on either side.

"Truly there are reasons to support such an extension of Eastwood and truly there are reasons which argue against it."

It is deducible from Mr. Robinson's testimony that the "kind of information" he needed for a conclusive answer was a market study or information relative to demand for the development of the hospital property as a shopping center. Other witnesses presented by the appellees did testify as to this factor as to the need for developing the hospital property as a shopping center.

Under a general assignment of error to the effect that the court erred in declaring Ordinance 391 G to be valid, the appellant has argued four points.

1. Appellants contend that Ordinance 391 G is invalid because it is unreasonable and amounts to nothing more than an arbitrary fiat.

A city governing body in considering a zoning ordinance, as in case of any other ordinance, acts in a legislative capac-

ity. Ball v. Jones, 272 Ala. 305, 132 So.2d 120; Marshall v. City of Mobile, 250 Ala. 646, 35 So.2d 553; Episcopal Foundation of Jefferson County v. Williams, 281 Ala. 363, 202 So.2d 726.

■ Further, if the adoption of the ordinance raises questions upon which reasonable differences may exist in view of all the circumstances, and the wisdom of the ordinance is fairly debatable, then the action of a municipal governing body in adopting the ordinance will not be deemed arbitrary, a court being unwilling under such circumstances to substitute its judgment for that of the municipal governing body acting in a legislative capacity. Leary v. Adams, 226 Ala. 472, 147 So. 391; Episcopal Foundation of Jefferson County v. Williams, supra.

■ The evidence presented by the appellees below, if not preponderating, and it might well be so considered, without question raises debatable and delicate issues as to the wisdom of enacting Ordinance 391 G. The solution of these issues is primarily within the province of the city governing body performing its legislative duties. We find no warrant under the evidence presented justifying the court below, or this court, in declaring that the action of the City Council of Birmingham was arbitrary or capricious in enacting Ordinance 391 G.

2. Appellants contend that Ordinance 391 G is invalid in that the ordinance was improperly identified in the published notice of the hearing, and in the ordinance itself as pertaining to amending Section 2, Article III of Chapter 57 of the General Code of the City of Birmingham of 1944, as amended.

The basis of appellants' argument under this contention is that the City of Birmingham duly adopted a new General Code in 1964, and therefore a reference to the 1944 Code is misleading.

The City of Birmingham did adopt a new general code in 1964. In this code, however, it was specifically provided that a large number of prior ordinances and codes should not be repealed or affected by the adoption of the 1964 Code, including "Chapter 57 of the General Code of the City of Birmingham, as amended * * * (zoning)."

Section 655, Title 62, Code of Alabama 1940, applicable to the City of Birmingham, authorizes its governing body to adopt at any time it deems proper a "code or codes."

Section 3.17 of Act No. 452 of the 1955 Regular Session of the legislature is to the same effect. See 1955 Acts of Alabama, Reg.Sess., p. 1004.

Counsel for appellants contend there can be only one "general code" of a city.

■ We know of no reason why a municipality could not have more than one code, where such codes cover different and unrelated subjects.

■ The zoning code appearing in the 1944 general code was specifically saved from repeal by the 1964 general code, along with many other provisions of the 1944 code. No zoning provisions were contained in the 1964 code. The zoning provisions of the 1944 code therefore remained valid and intact. We find nothing misleading in the references in the published notice or the ordinance relative to amending Chapter 57, etc., of the 1944 code of the City of Birmingham. In fact such references would appear to be the only proper ones. We find no merit in this contention by the appellants.

3. Appellants contend that Ordinance 391 G is invalid because not published once a week for two consecutive weeks prior to its passage.

If accepted, counsel's argument would result in a conflict between Sections 714 and 715, Title 62, and Section 778, Title 37 of our Code of 1940.

Sections 710 to 720 of Title 62 authorizes the enactment of zoning ordinances by the

City of Birmingham. Sections 714 and 715 of said Title set out the method of procedure in enacting and amending zoning regulations. Each requires a public hearing prior to enactment, and further specify only that: "At least fifteen days' notice of the time and place of such hearing shall be published in an official paper, or a paper of general circulation, in the city."

On the other hand, Section 778, Title 37, Code of Alabama 1940, dealing with municipalities in general, requires that no ordinance be passed until same has been published once a week for two consecutive weeks.

■ The progenitors of all of these sections were adopted in the 1940 Code. Therefore they should be harmonized unless in irreconcilable conflict.

■ Since Sections 714 and 715, supra, are applicable to Birmingham alone, and do not refer to Section 778, supra, we consider that they are self sufficient.

Further, this conclusion is necessitated by Act No. 296 of the 1955 Regular Session of the Legislature (See 1955 Acts of Alabama, Reg.Sess., p. 691). Said Act provides that the governing body of any city which may now or hereafter, have a population of two hundred and fifty thousand inhabitants or more may amend, modify, supplement, or repeal any zone regulation, zone restriction, or zone district of such city, and that *"the provisions of Section 714, Title 62, Code of Alabama 1940 relative to public hearings and official notices shall apply equally to all changes or amendments."* (Italics ours.)

■ 4. Appellants' contend that Ordinance 391 G is invalid because passed at a secret meeting of the City Council of Birmingham in contravention of Sections 393 and 394 of Title 14, Code of Alabama 1940, which sections prohibit executive or secret

sessions of various boards and commissions, including municipal councils, and imposes a penalty for such secret meetings.

The evidence in this regard shows that there had been discussions between councilmen and parties interested pro and con in the rezoning of the property in question. One of the councilmen at least had ridden out to the property and looked over the area himself. The evidence further shows that it is customary for the City Council to meet in an informal gathering an hour before the scheduled weekly meetings of the Council. The purpose of such informal meetings is to work out an agenda of the executive meeting. No formal business is transacted at such meetings, and the public and press are admitted. There may be a "show of hands" at these informal meetings as to whether certain matters would be taken up at the formal session of the Council. No votes, however, are taken at these informal meetings.

The evidence further affirmatively shows that Ordinance 391 G was formally considered and passed at an executive meeting of the Council which was fully open to the public and the press.

We find no support in the evidence of the appellants' contention that Ordinance 391 G was passed at any secret meeting.

The Chancellor ore tenus heard the witnesses and observed their demeanor. Unless palpably wrong, this court will not substitute its view for the conclusions of the Chancellor. In our opinion, even without resort to the presumption in favor of the Chancellor's decree, the evidence is abundant and substantial supporting it. The decree below is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., SIMPSON and MERRILL, JJ., concur.