At issue on this appeal is whether the refusal of the Decatur city council to rezone the subject property from an R-1 zoning classification (Residential — Single Family) to an R-4 zoning classification (Residential-Multi Family) was arbitrary and capricious so that the trial court's refusal to grant injunctive relief was manifestly unjust.
Betty Woodard, one of the appellants, purchased the subject property on February 15, 1972, at which time the property was zoned R-1. Ms. Woodard subsequently sold a one-half interest in the property to Merrill Doss. The property contains between 14 and 14.5 acres.
The property is located in the southeastern quadrant of the intersection of U.S. Highway 31 (North-South) and Alabama Highway 67 (East-West) in the City of Decatur. Another tract of land owned by the appellants, adjoining this land, fronts on U.S. Highway 31 and is zoned B-1 (Local Shopping District). Immediately adjacent to appellants' property on the north side is the Bayside Subdivision, which is zoned R-2 (Residential Single Family). The primary difference between R-1 and R-2 is the requirement for yard and lot size and the maximum percentage of building area allowed. The subject property is abutted on the west side by appellants' commercial property, which extends to U.S. Highway 31, and by commercial property belonging to Robert Mills. The property is abutted on the east side by the Joe Wheeler Wildlife Refuge and on the south side by approximately 400 feet of land owned by Robert Mills and approximately 1300 feet of the wildlife refuge. Brungart Equipment company is approximately 450 feet south of the subject property. An industrial park site is located approximately 1,350 feet from the subject property and is separated from it by the Joe Wheeler Wildlife Refuge.
On February 4, 1981, appellants petitioned the planning commission of the City of Decatur to have the property rezoned from an R-1 classification to an R-4 classification. In their rezoning application, appellants stated as justification for the proposed change that the use of the property for single family dwellings was not feasible because the cost of development would make such units unmarketable.
The city planner for the City of Decatur, Rob Walker, admitted that the zoning committee of the planning commission recommended approval of the request, subject to certain conditions. These conditions included: (1) that separate access to the property from Highway 31 be provided; (2) that only single story units be allowed along the northern boundary line of appellants' property and abutting the Bayside Subdivision; (3) that the single story units abutting Bayside Subdivision only be allowed to back up to and face south along the northern boundary line of appellants' property; and (4) that a permanent fence and landscaping be built and maintained abutting the Bayside Subdivision.
The recommendations of the zoning committee were presented by Mr. Walker to the planning commission. The planning commission of the City of Decatur denied the appellants' petition on March 31, 1981.
After the rezoning request was denied by the planning commission, appellants commissioned the firm of Shumaker, Taylor and Hall, of Tuscaloosa, to do a study on the subject property to determine the feasibility of developing it.
The technical report, written by Karl Shumaker, a surveyor, and James Weiss, Jr., an engineer, indicated that a major cost factor in developing appellants' property would be the structural fill required, since much of the property lies below the flood plain zone. The report concluded that the highest and best use of the subject property exists as a multi-family housing project. This conclusion was derived by a comparison of the estimated costs for R-1, R-2, and R-4 subdivisions. Shumaker and Weiss estimated *Page 1175 
that it would cost approximately $12,000 per lot to develop the property for the R-1 or R-2 classification and that the property would have to be marketed at $17,500 to $20,000 per lot in order to make development economical and practical. Shumaker and Weiss further indicated their belief that probably no market for such property existed in the area.
This report, along with other testimony, was presented to the city council of Decatur on May 4, 1981. Representatives of the Bayside Subdivision residents, through various witnesses, presented their case in opposition to the application. After a public hearing, the Decatur city council denied appellants' petition for a zoning change due to the lack of a motion to approve or disapprove the rezoning request.
Appellants then filed suit in the Circuit Court of Morgan County, seeking a declaratory judgment and injunctive relief, alleging that the refusal or failure of the city council to rezone the subject property was arbitrary, capricious, and had no legally significant relationship to the health, safety, or general welfare of the City of Decatur or its inhabitants. The complaint also averred that the subject property is located along U.S. Highway 31, and that property along that highway is undergoing substantial transition because Highway 31 has become a heavily travelled four-lane highway, and, further, that Highway 67 has been expanded to a four-lane highway, thereby increasing the commercial and industrial growth and desirability of the area. The trial court heard the evidence and viewed the property at the close of the evidence. The court rendered its judgment in favor of the mayor, city council, and City of Decatur, appellees herein. We affirm.
The governing body of a municipality, in considering a zoning ordinance, acts in a legislative capacity. Waters v. City ofBirmingham, 282 Ala. 104, 209 So.2d 388 (1968). Because zoning ordinances are legislative acts, they are presumed valid unless they are shown to be arbitrary and capricious. Cudd v. City ofHomewood, 284 Ala. 268, 224 So.2d 625 (1969). This Court inWaters v. City of Birmingham, 282 Ala. 104, 209 So.2d 388
(1968), stated:
 "[I]f the adoption of the ordinance raises questions upon which reasonable differences may exist in view of all the circumstances, and the wisdom of the ordinance is fairly debatable, then the action of a municipal governing body in adopting the ordinance will not be deemed arbitrary, a court being unwilling under such circumstances to substitute its judgment for that of a municipal governing body acting in a legislative capacity."
282 Ala. at 108, 209 So.2d at 391. This Court in JeffersonCounty v. O'Rorke, 394 So.2d 937 (Ala. 1981), reiterated:
 "A basic axiom of the law in zoning cases is that a trial court will affirm the decision of a duly constituted municipal body so long as the court finds that decision to be based on a `fairly debatable' rationale."
394 So.2d at 938. Further, the Court in O'Rorke noted that the failure of the zoning authority to amend or modify its ordinances could, under some circumstances, be arbitrary. 394 So.2d at 939. Our review, therefore, is limited to whether the denial of the zoning application was fairly debatable and one upon which reasonable men could be expected to differ. See,City of Gadsen v. Downs, 412 So.2d 267 (Ala. 1982).
We think it appropriate to point out here that financial loss is not the test to determine if the zoning ordinance is arbitrary and capricious. COME, an Unincorporated Associationof Citizens v. Chancy, 289 Ala. 555, 269 So.2d 88 (1972). This Court in Episcopal Foundation of Jefferson County v. Williams,281 Ala. 363, 367, 202 So.2d 726, 730 (1967), stated:
 "The fact that the complainants . . . may suffer some financial loss and depreciation in the value of their property is not a test of the constitutionality of the zoning ordinance; nor is it a test to determine if the zoning ordinance is arbitrary, capricious, inequitable and discriminatory."
Appellants in the case before us argue initially, not that the property is unsuited *Page 1176 
for single family residential purposes, but instead contend that it is not practical or economically feasible to develop the property for these purposes. Appellants' arguments appear to go further than asserting that they will suffer economic loss as a result of the city council's failure to rezone the property; appellants argue that the city council's failure to rezone has, in effect, denied them the use of the property. Appellees, on the other hand, argue that the property is usable and has value as presently zoned, although they admit that the property could be more profitably used under a different zoning classification.
Appellants' claim that it was not economically feasible to develop the property according to the R-1 classification was primarily based on a technical report submitted by Shumaker and Weiss, which stated that the lots would have to be marketed at $17,500 to $20,000 per lot. Appellees, through the testimony of the city engineer, Joel Pugh, challenged the figures used in the report. Mr. Pugh set out to determine the actual total cost that would be incurred in development, exclusive of land costs and interest during construction. Although the final development cost derived by Pugh was only a total of approximately $8,000 less than the cost suggested by Shumaker and Weiss, Pugh's estimate included numerous items not included in the report submitted by Shumaker and Weiss. Costs provided in Pugh's estimate which were not provided for in the report of Shumaker and Weiss included costs for a water distribution system; engineering and design costs; construction, layout and inspection costs; building permits and fees; and concrete drainage channels; which costs totalled some $112,519.
Appellees also introduced the testimony of Tom Edgil, a land appraiser, who had made a study of the property values in the area of the subject property. Mr. Edgil placed a fair market value of $25,900 on the property zoned under the R-1 classification after deduction of estimated costs for filling the land. Mr. Edgil placed a net value of $158,025 on the property as developed under the R-2 classification, after a deduction for development costs as projected by City Engineer Pugh. Mr. Edgil, however, admitted that there was not much demand for R-1 and R-2 lots at that time in the City of Decatur.
The fact that the market for this type of housing may be depressed is not determinative. Our review is limited to whether the refusal or failure to rezone the subject property was fairly debatable and one upon which reasonable men could be expected to differ. Applying the "fairly debatable" test to the record in this case, we find that there was a fairly debatable
question regarding the feasibility of developing the property according to the R-1 or R-2 classification upon which the city council could base its denial of the rezoning request.
Appellants also argue that conditions surrounding the subject property have changed to the extent that the failure of the city council to rezone the subject property is arbitrary and capricious. Appellants point to 37 zoning amendments since 1967 that have occurred in the four-square-mile area in which appellants' property is located. Appellees respond that many of these amendments were necessitated by annexation of property lying on the west side of U.S. Highway 31, and that others were totally outside the area of the subject property.
In Jefferson County v. O'Rorke, 394 So.2d 937 (Ala. 1981), this Court held that Jefferson County's refusal to rezone the subject property from residential to commercial use was not "fairly debatable" when the subject property was shown to be no longer useful for residential purposes because of significantly changed conditions in the immediate area.
After reviewing the evidence in this case, we conclude that afairly debatable question existed as to whether conditions in the immediate area of the subject property had changed so that it was no longer useful for single family residential purposes. The zoning map for the City of Decatur reveals that strip commercial zoning exists generally along U.S. Highway 31, with residential *Page 1177 
uses backing up to the commercial strip on the east side and with industrial uses located on the west side of Highway 31, constituting an industrial zone, in the area surrounding the Woodard property.
Evidence in the record reflects at least two zoning changes in the immediate area of appellants' property. The Brungart property, located approximately 450 feet south of the Woodard property, was rezoned from R-1 and B-1 zoning classifications to a B-2 zoning classification. Evidence in the record indicates that this property is screened to a large extent from appellants' property.
The Mills tract abuts a portion of the appellants' property fronting U.S. Highway 31 which is zoned for business, and a portion of the subject property. The Mills tract was zoned B-1 at the time appellants acquired the subject property. The record indicates that the Mills tract was rezoned to a B-2 classification to accommodate an automobile dealership. There is evidence in the record that although the minimum yard size for B-2 is now the same as for B-1, the B-2 classification allows a more intensive use. We are unable to say, however, that this rezoning constitutes such a change in conditions that the subject property is no longer useful for single-family residential purposes.
We note also that the decree below is favored with a presumption of correctness and is not to be disturbed unless it is plainly or palpably wrong, without supporting evidence, or manifestly unjust. Cale v. City of Bessemer, 393 So.2d 959
(Ala. 1980). Mindful of our limited scope of review in zoning cases and the well-settled rule that when evidence is presented ore tenus a strong presumption of correctness exists in favor of the trial court's findings, we affirm the decision of the trial court.
AFFIRMED.
MADDOX, JONES, SHORES and BEATTY, JJ., concur.