This is an appeal from the following judgment:
 "FINAL JUDGMENT
"This cause came on to be heard upon testimony taken and evidence produced at an oral hearing at which the Plaintiffs were represented by Attorney Jesse P. Evans, III, the Defendants were represented by Attorney Charles S. Wagner, and the Intervening Defendants were represented by Attorney Patrick H. Boone. Based upon such testimony and evidence, the Court makes the following findings of fact: *Page 240 
"1. The property which is the subject of this cause is a tract of approximately 8.2 acres lying in the Northeast quarter of the Southwest quarter of Section 36, Township 18 South, Range 3 West and is more particularly described as follows:
 "`Commence at the NW corner of the NE 1/4 of the SW 1/4, Section 36, Township 18 South, Range 3 West; thence run South along the West boundary of said 1/4-1/4 section for a distance of 574 feet to the point of beginning of property herein described; thence turn an angle to the left of 88 degrees 40 minutes 45 seconds and run Easterly along a line 574 feet south of and parallel with the North boundary of said 1/4-1/4 section for 343.5 feet; thence turn an angle of 37 degrees 26 minutes to the right and run southeasterly for 315.35 feet; thence turn an angle of 7 degrees 08 minutes 30 seconds to the right and run Southeasterly for 251.92 feet; thence turn an angle of 27 degrees 46 minutes to the right and run Southeasterly for 267.06 feet; thence turn an angle of 72 degrees 16 minutes 30 seconds to the left and run Easterly for 108.5 feet; thence turn an angle of 57 degrees 33 minutes 30 seconds to the right and run Southeasterly for 152.15 feet to intersection with the South boundary of said 1/4-1/4 section; thence turn an angle of 122 degrees 22 minutes 30 seconds to the right and run West along the South boundary of said 1/4-1/4 section [to] the intersection with the Northeast boundary of Columbiana Road; thence run Northwest along the Northeast boundary of said road to the intersection with the West boundary of said 1/4-1/4 section; thence run North along the West boundary of said 1/4-1/4 section for 60 feet, more or less, to the point of beginning.
 "`LESS AND EXCEPT right of way to the Jefferson County for widening of Columbiana Road, as recorded in deed Volume 6605, page 281, in the office of the Judge of Probate of Jefferson County, Alabama.' ("Property")
"2. The property which is zoned for single family use by Jefferson County is bound on the west by Columbiana Road, on the north and east by a fairly large undeveloped tract which is zoned for single family use by Jefferson County, and on the south by a power line right-of-way and then by the Carovel Circle neighborhood which is a single family neighborhood under the zoning of the City of Vestavia.
"3. North of the property, along the east side of Columbiana road, and beyond the undeveloped tract which is zoned R-1 single family by the County, is another tract which is zoned for residential use by the County but which is used for a church and its related purposes. Further north is a tract zoned RC-1 Condominium by Vestavia which is a multi-family residential area and then a large area of R-2 single family zoning and usage.
"To the south of the power line right-of-way is the neighborhood zoned R-2 single family by Vestavia. This is Carovel Circle which is developed with approximately 24 single family residences. South of Carovel Circle there is a fairly large tract which is zoned for residential use by Vestavia but which is used for a church and its related purposes. There is then a tract which Vestavia has zoned as an R-5 multi-family use and which is developed with apartment buildings. Further south is a fire station and then various business and office uses with appropriate zoning. Columbiana Road intersects Tyler Road just below the fire station and then intersects U.S. 31 South in the area of the I-65 and U.S. 31 South interchange. The business property generally lies between Tyler road and U.S. 31 South except for the property located at the intersection itself.
"Across Columbiana Road from the northern part of the Property lies Berry High School on property which is zoned I County Institutional. To the south of the Berry High School tract, but still across from the property, is a small undeveloped tract which is zoned R-1 by the County. To the north of Berry High School, along the west side of Columbiana Road, is a very large subdivision that is zoned and developed as R-2 single family by Vestavia. This area goes as far to the north of *Page 241 
the Property on the west side of Columbiana Road as the property previously described by the Court on the east side of the road.
"To the south of Berry High School and the undeveloped R-1 tract, on the west side of Columbiana Road, is another small tract which is zoned C-P by the County and on which an office building is located. To the south of the office building almost all of the way to the intersection of Tyler Road is a large area zoned R-4 multi-family by the County which is fairly heavily developed by apartment complexes. The property at the intersection is zoned B-1 by Vestavia and is used for business purposes.
"To the east of the Property is the undeveloped tract which is zoned R-1 by the County and to the east of that, coming off of another road, is a tract which is zoned for a multi-family use by the county and which is developed with apartments.
"4. The topography of the Property is such that [it] is fairly level with Columbiana Road on the west, sloping generally downhill from north to south and it slopes gently to the east for about two-thirds of the width of the tract and then slopes sharply down to a ditch on the eastern edge of the Property. The grade on the slope on the eastern third of the Property is approximately 25%.
"5. Testimony concerning the amount of traffic along Columbiana Road varied, but the Court finds that the traffic generated from the Property, under any development plan currently proposed, would not have a material effect on the traffic on Columbiana Road. From the testimony, the Court notes that there was a traffic count showing 19,020 vehicles per day along Columbiana Road in October 1973 (Mrs. Cooper's testimony) and that after Interstate 65 opened in 1974 the traffic count dropped to approximately 5,940 vehicles per day in May, 1974 and 5,690 vehicles per day in July 1975. The traffic is currently estimated at approximately 9,000 vehicles per day (Mrs. Bondarenka's testimony). It is estimated that Columbiana Road has a capacity for 1,290 vehicles per hour (Mr. Robinson's testimony). In any event, it seems clear that Columbiana Road is more than adequate to handle any traffic associated with the development proposed for the Property.
"6. A water detention system has been designed and could be constructed on the property which would prevent any increase in the rate of flow of rain water runoff from the Property.
"7. An on-site sewage disposal system has initially been approved by the Jefferson County Health Department (on August 30, 1982) which would be sufficient to handle the first part of the proposed development of the Property.
"8. All proposed and suggested development of the Property anticipates a road coming off of Columbiana Road onto the Property so that the development of the Property will either face toward the interior of the tract or at least be contained inside the tract. There was no testimony of any proposed or suggested development which would require structures facing Columbiana Road.
"9. The general development of the area described in paragraph 3 above over the past decade has been mixed with mostly single family and multi-family construction but with some church and office building development.
"10. The Property is zoned R-1 Single Family by Jefferson County. The Plaintiff requested a change of zoning from R-1 to C-P (Commercial preferred) in order to be able to develop the Property with office buildings. The Planning and Zoning Commission of Jefferson County recommended denial of the request (Plaintiffs' Exhibit 20) and the Jefferson County Commission did deny the rezoning (Plaintiffs' Exhibit 22). Plaintiffs then brought this appeal.
"The role of the trial court in its consideration of zoning cases is set out with particular clarity by the Alabama Supreme Court in the case of City of Birmingham v. Morris, 396 So.2d 53
(Ala. 1981), where it stated: *Page 242 
 "`In the recent decisions of Jefferson County v. O'Rorke, 394 So.2d 937 (Ala. 1980), and Cale v. City of Bessemer [1980], 393 So.2d 959 (Ala. 1980), the Court reiterated its abiding adherence to the rule of law that a trial court must not disturb the zoning decision of a duly constituted municipal body so long as that decision is based upon a "fairly debatable" rationale. A zoning determination is said to be fairly debatable "when for any reason it is open to dispute or controversy on grounds that make sense or point to a logical deduction that in no way involves its constitutional validity." Miami Beach v. Lachman, 71 So.2d 148 (Fla. 1953), or where the evidence provides a basis for a fair difference of opinion as to the application of the determination to particular property. See generally, 1 R. Anderson, American law of zoning, Sec. 3.20 (2nd ed. 1977).
 "`By virtue of this "Fairly debatable" rule, the role of the judiciary in zoning cases is extremely limited and the dimensions of judicial review are narrowly confined. 4 E. Yockley, Zoning law and Practice Sec. 25.2 (4th ed. 1979); 4 R. Anderson, American law of Zoning Sec. 25.26 (2nd ed. 1977). Courts must recognize that zoning is a legislative function committed to the sound discretion of municipal legislative bodies, not to the courts. Waters v. City of Birmingham, 282 Ala. 104, 209 So.2d 388 (1968); Marshall v. City of Mobile, 250 Ala. 646, 350 [35] So.2d 553 (1948). As a result, local governing authorities are presumed to have a superior opportunity to know and consider the varied and conflicting interests involved, to balance the burdens and benefits and to consider the general welfare of the area involved. Episcopal Foundation of Jefferson County v. Williams, 281 Ala. 363, 202 So.2d 726 (1967); Leary v. Adams, 226 Ala. 472, 147 So. 391
(1933). They, therefore, must of necessity be accorded considerable freedom to exercise discretion not diminished by judicial intrusion. Walls v. City of Guntersville, 253 Ala. 480, 45 So.2d 468 (1950). Nevertheless, this discretion is not unbounded, and local authorities may not, under the guise of legislative power, impose restrictions that arbitrarily and capriciously inhibit the use of private property or the pursuit of lawful activities. When such arbitrary and capricious action is made apparent, a reviewing court will not hesitate to disturb the zoning determination as a clear abuse of discretion.'
"The Plaintiffs do not argue that single family residences cannot be constructed on the property, they argue instead that the costs would be prohibitive or at least in excess of the value of other residential lots in the area. The costs are largely based on the size of the lots needed in order to have septic tank field lines. The Court notes two factors in connection with this argument. First, the sewer moratorium which is now in effect, may not be permanent and the County Commission may rightfully be reluctant to allow permanent changes in the nature of an area due to temporary conditions. [It was undisputed that perhaps twice as many houses and lots could be developed on the Property if they could be connected to the sewer line which is presently available at the property except for the moratorium.] Secondly, the cost estimates are based on the value of the Property for commercial use. The value of the Property for residential uses, as shown by the Plaintiffs' evidence, may very well be lower than its value for commercial use, however, value alone does not determine the issue and in this instance it is merely one more factor to be considered by the County Commission. [Leary v. Adams, supra,Episcopal Foundation of Jefferson County v. Williams, supra.] It is the opinion of the Court, based on the testimony and evidence presented in this case, that it is at least fairly debatable that the Property has a reasonable, practical and realistic use under the R-1 (Single Family) zoning classification.
"Plaintiffs have cited the case of Davis v. Sails,318 So.2d 214 (Fla.App. 1975) and the `substantial relationship' rule set out therein. It seems clear, even under *Page 243 
Alabama cases that since the zoning authority is derived from the police power, a zoning regulation must bear a real or substantial relationship to the public health, safety, morals, general welfare, public convenience or general prosperity.[Allen v. Oxford (Axford), 285 Ala. 251, 231 So.2d 122 (1969);City of Birmingham v. Norris, 374 So.2d 854 (Ala. 1979)] The Court finds that, in the present case, the substantial relationship to the police powers is the intent to preserve the undeveloped property in the area for development as a single family residential area. It is certainly arguable that the character of the neighborhood bears a substantial relationship to its health, safety, morals, general welfare, public convenience and general prosperity. In so finding, the Court does not mean to imply that the proposed development would have a negative impact on any of the elements enumerated above, to the contrary, if the Court were to reach that question, it would find that there was no negative impact, however, since the Court believes the decision of the County Commission did bear a relationship to the police power, and that its decision satisfied the `fairly debatable' test, the Court does not need to go further.
"Accordingly, it is CONSIDERED, ORDERED, ADJUDGED and DECREED by the Court as follows:
"ONE: The decision of the Jefferson County Commission in denying the application for a change of zoning of the Property from R-1 (Single Family) to C-P (Commercial preferred) was fairly debatable.
"TWO: The decision of the Jefferson County Commission bears a substantial relationship to the public health, safety, morals, general welfare, public convenience or general prosperity of the community and general area in which the Property is located.
"THREE: The relief which the Plaintiffs request in their Complaint is denied.
"FOUR: Costs of this action are taxed to the Plaintiffs.
"DONE and ORDERED this 29th day of November, 1982."
The appeal is from the denial of relief requested in an action brought by the owners to have a zoning ordinance declared unconstitutional as applied to their property[1] and for injunctive relief against its enforcement.
The owners filed an application for the rezoning of the property involved in this case with the Jefferson County Planning and Zoning Commission on March 3, 1982. In this application the owners requested a change from the present zoning classification of R-1 (single family residential) to the C-P classification to permit the construction of an office building on the property. A public hearing was held by the Planning and Zoning Commission, which recommended to the Jefferson County Commission that the owners' application be denied. Subsequently, on May 4, 1983, the Jefferson County Commission held a public hearing on the owners' application and, after taking the matter under advisement, denied the application. The commissioners gave no reasons for their denial.
The owners then filed their complaint for injunctive and declaratory relief, alleging, among other things, that because of the physical characteristics of the property it has no reasonable use under the R-1 classification and that the failure of the Commission to rezone the property was arbitrary and capricious, and that the failure to rezone has no relationship to the health, safety, morals and general welfare of the inhabitants of Jefferson County. The owners sought to have the trial court declare the zoning regulation unconstitutional as applied to their property and to enjoin Jefferson County from enforcing or attempting to enforce any zoning regulation more restrictive than the C-P classification.
The County answered by asserting that the decision of the Commissioners was based upon a "fairly debatable" question regarding rezoning of the property. Four such "fairly debatable issues" were specified: (a) residential character of the *Page 244 
neighborhood, (b) increased traffic, (c) potential drainage problems, and (d) availability of sewage disposal facilities in the area.
Immediately prior to trial of the case, a number of owners of property to the south of the property involved in this case filed a motion to intervene and an answer. Intervention was allowed over the objection of the owners.
The case was tried without a jury and on November 29, 1982, the trial court denied the relief requested by the owners.
 The Issues
The owners state two issues for review.
I
 "Does the intent to preserve undeveloped property for single family development bear a substantial relationship to the objects of the police powers so as to justify restrictions on the use and enjoyment of privately owned property where lesser restrictive regulations would produce no negative results on the health, safety, morals, general welfare, public convenience, and general prosperity?"
II
 "Is the principle that the enactment of a police power regulation will be held valid so long as it is based upon a fairly debatable rationale applicable to a determination of whether a police power regulation bears a substantial relationship to the objects of the police powers?"
Appellees stated the issues as follows:
I
 "Whether an appellate court will disturb the ruling of the trial court which determined that appellee's decision not to rezone appellants' property was fairly debatable and where the conclusion of the trial court is supported by credible evidence and is not palpably wrong and manifestly unjust."
II
 "Can a property owner seek a change in classification of property under a zoning ordinance and at the same time and in the same proceeding attack the constitutional validity of such ordinance?"
III
 "Whether the trial court correctly applied the fairly debatable rule in upholding the denial of the requested zoning classification change by the Jefferson County Commission?"
The Byrd Companies (Byrd) and Crowder, individually and as administrator of his mother's estate, are under contract to permit Byrd to purchase the subject property, on condition that it be rezoned from single family dwelling residential classification (R-1) to commercial preferred (C-P). Application was made by Byrd and Crowder to the Planning and Zoning Commission of Jefferson County seeking that reclassification. Notice was sent them, and other property owners within 500 feet of the property, that a public hearing would be held by the Commission. At that hearing various questions were raised and discussed, focused on the residential character of the neighborhood surrounding the Crowder property; drainage; access to the proposed office building; traffic on Columbiana Road; physical characteristics of the land; size, location and area of the proposed office buildings; and effect on property values in the neighborhood. After that hearing the Commission recommended disapproval of the requested rezoning.
Appeal was taken to the Jefferson County Commission and Commissioners Doss and Erdreich heard the matter. The County Commission had before it much of the same information as had the Planning and Zoning Commission, including a Field and Engineering Report, prepared for the latter commission, the Staff Committee Report of that commission, letters of affected property owners opposing the requested rezoning, and the Planning and Zoning Commission's recommendation of disapproval. In addition to the issues discussed at the Zoning *Page 245 
Commission hearing, Bryd and Crowder presented several experts to show the Crowder property was not suitable for single family residential use. After taking the matter under advisement, the County Commission denied the requested rezoning.
This action was then filed. The allegations of the complaint necessary for an understanding of this court's decision are:
 "6) The property is, because of its physical characteristics, unsuitable for any reasonable use under its present zoning classification, and plaintiffs allege that the most restrictive appropriate use of the property is a use permitted under the aforesaid C-P Zoning Classification which Plaintiffs applied for and Defendants denied. Plaintiffs allege that any change in zoning classification of subject property from its present R-1 classification to C-P classification will not cause any undue or unreasonable burdens upon neighboring property.
"SPECIFIC ALLEGATIONS
 "7) Plaintiffs allege that Defendant's refusal or failure to grant Plaintiffs' requested change in zoning classification was arbitrary, capricious, and unlawful, and that such refusal or failure has no conceivable relationship to the health, safety, morals or general welfare of the inhabitants of Jefferson County, Alabama, and such failure is confiscatory and constitutes a taking of the Plaintiffs' interests in subject property without due process of law. Plaintiffs allege that the said Jefferson County zoning Regulations, as applied to the property are unconstitutional.
 "8) Plaintiffs allege that their proposed use of the property will not unduly or unreasonably affect surrounding properties detrimentally, nor will any undue burden or hazard be created by traffic or other incidental characteristics of the proposed use, but that the proposed use of Plaintiff's property will allow the use of the property which can only reasonably be used if classified C-P as aforesaid.
 "9) The property and the surrounding properties have, during the past ten years, experienced substantial change in circumstances and conditions in that the various neighboring properties have been developed by the erection of commercial structures (both retail and office), and multiple family structures (apartments and condominiums).
 "10) The Plaintiffs are, because of the present zoning classification of the property, unable to economically develop or put the property to any appropriate use, and that the best use and an appropriate use of the property is as a professional office development as permitted under Section 801 of the Jefferson County Zoning Regulators, as amended.
"11) Plaintiffs offer to do equity.
 "Wherefore, premises considered, Plaintiffs pray that this Court will take jurisdiction of this action and will cause process to be issued to the defendants requiring them to plead or answer within the time allowed by law and the rules of this Court or otherwise suffer judgment by default against them, and that this matter will be set for hearing and consideration by this court and that upon a hearing and consideration of this matter, this Court will:
 "(A) Declare the Jefferson County zoning regulations and ordinances under which the property is presently classified to be unconstitutional as applied to the property;
 "(B) Enjoin and restrain Defendants and their successors from enforcing or attempting to enforce the present R-1 zoning classification as to subject property and from preventing or interfering with Plaintiff's construction and development of a professional office building or other appropriate use to which the property may be put under a C-P zoning classification;
 "(C) Order and direct the Defendants to approve Plaintiff's application for rezoning of the property from its present R-1 classification to a C-P zoning classification so that the property may be reasonably *Page 246 
utilized by Plaintiffs so long as Plaintiffs comply with other orders, rules or regulations of Jefferson County, Alabama, pertaining to the construction, erection, development, completion, and maintenance of professional office buildings."
Pertinent allegations of the answer of defendant commissioners are (we do not deem it necessary for decision to deal with the Intervenors' answer and role in the trial of this action):
 "(7) Paragraph 11 of the Complaint is in the nature of a jurisdictional allegation and does not require an affirmative or negative response by these Defendants.
"SECOND DEFENSE
(Debatable Issue)
 "These Defendants further answering state as follows: Records of the Planning Zoning Commission indicate that on or about April 8, 1982, the Plaintiffs, by and through their attorney, appeared before the Jefferson County Planning Zoning Commission; and, in accordance with that Commission's procedure, were allowed to make a presentation in support of their requested zoning change. Numerous opponents to the requested zoning change also appeared before the Jefferson County Planning 
Zoning Commission and were allowed, in accordance with that Commission's procedure, to present arguments in opposition to the requested zoning change. The Jefferson County Planning Zoning Commission unanimously voted to deny the rezoning request.
 "On May 4, 1982, these Defendants, with the exception of Commissioner Moore, considered Plaintiffs' application, and, following a presentation by Plaintiffs in support of the requested rezoning heard a presentation by numerous opponents to the requested rezoning and took the matter under advisement in accordance with the Defendants' established procedure. A decision was rendered on May 11, 1982, denying the requested rezoning.
 "Both the Planning and Zoning Commission and the County Commission considered numerous debatable issues including the following issues in reaching a decision:
 "(a) the residential character of the adjoining properties,
 "(b) increased vehicular traffic flow problems that would be created along Columbiana Road,
 "(c) the potential drainage problems created by the clearing and grading specifications of the proposed plans for the site, and
"(d) the availability of sewer service in the area.
 "Each and every one of these issues was a debatable issue presented to the Jefferson County Commission and were among many issues considered by them in denying the requested rezoning.
"THIRD DEFENSE
(Failure to State a Claim)
 "The Complaint fails to state a claim against these Defendants answering upon which relief may be granted."
After trial, ore tenus, with sharply conflicting evidence, the judgment appearing earlier in this opinion was entered.
The issues as stated by the parties have been set out and we must now look to the controlling principles of law in order to address those issues in light of the facts of this case and the judgment of the trial court. We think that no improvement could be made by this court on the statement of general principles of law governing cases of this nature found in Davis v. Sails,318 So.2d 214 (Fla.Dist.Ct.App. 1975):
 "The law is so well settled as to require no citations of authority that a city or county has the right and power, within the confines of applicable enabling statutes, to adopt zoning ordinances or regulations. Further, such zoning ordinances or regulations are, like other legislative acts, presumed valid. Two other rules or law, which sometimes become confused *Page 247 
and intertwined, are the `substantial relationship rule', and the `fairly debatable rule'. The substantial relationship rule is substantive law, and may be simply stated as follows: In order for a zoning ordinance or regulation to be valid, it must have some substantial relationship to the promotion of the public health, safety, morals or general welfare. When correctly applied, this rule is not in any manner modified by the fairly debatable rule. The latter rule, being a rule of procedure or application, may be simply stated as follows: if the application of a zoning classification to a specific parcel of property is reasonably subject to disagreement, that is, if its application is fairly debatable, then the application of the ordinance by the zoning authority should not be disturbed by the courts. Of course, it is always a matter for the court to determine whether a zoning authority acted reasonably or fairly or whether capriciously or arbitrarily. The fairly debatable rule applies to the application of the ordinance and does not modify the requirement that the ordinance itself and the application thereof must have a reasonable relationship to the health, safety, morals or general welfare. [Emphasis added.]
 "The general law, which is also the law of Florida, as to the validity of a zoning ordinance or classification, as applied to particular parcels of property, is succinctly stated in Volume 101 C.J.S. Zoning as follows:
 "`The justification for zoning enactments is the greater benefit which accrues therefrom to the public as a whole, or the paramount interest of the public welfare and the realization that private interests must sometimes be subordinated to the public good, or * * * it must be found in some aspect of the police power asserted for the public welfare. Such enactments, however, are subject to limitations on the police power, and cannot validly be extended beyond the accomplishment of purposes rightly within the scope thereof. [Emphasis added.]
 "`To be valid, they must be for the superior interest and rights of the public, or they must be predicated on a public interest and founded on a need of the community, and be conducive to, or subserve, the public welfare, or be for the public good. They must have a rational relation to the protection of the basic interest of society, and a public benefit must be derived from them. They are invalid if they disclose no purpose to prevent some public evil or fill some public need. [Emphasis in original opinion.]
 "`In order to be valid as a proper exercise of the police power, especially where their application will cause a destruction of property values, zoning laws, ordinances, by-laws, regulations and restrictions must advance, promote or tend or be designed to promote, the public health, safety, morals, or general welfare, or be reasonably necessary for the protection of the public health, safety, comfort, morals, or welfare, or have or bear a real and substantial relation to public health, safety, morals, or the general welfare; and it has been held that such enactments must bear the required relation with respect to the particular premises to which they are applied.'
". . . .
 "It is clearly the duty of the court to determine the validity of zoning ordinances as applied to a specific parcel of property. . . ." (Emphasis added.)
Guided by these principles, after examination of the entire record, after a reading of the quality briefs of able counsel, after scrutinizing with care the learned trial judge's findings, conclusions and judgment, we will answer the issues as posed by the parties.
We answer appellants' issue I in the affirmative. Also, we note with interest words of the trial court that "the court *Page 248 
does not mean to imply that the proposed development would have a negative impact on any of the elements enumerated above; however, since the court believes the decision of the County Commission did bear a relationship to the police power, and that its decision satisfied the `fairly debatable' test, the court does not need to go further."
It is evident from a reading of the final judgment in its entirety, in context, that the zoning regulation here under scrutiny, was determined by the trial court to have a substantial relationship to the promotion of the public health, safety, morals or general welfare. We agree.
Regarding issue II of appellants, we need only state that the evidence and the law support the conclusion of the trial court that the commission's decision satisfied the fairly debatable test. The trial court in so concluding is correct and we hold that, under the evidence of record, application of the zoning classification R-1 to the specific property of appellants is reasonably subject to disagreement (fairly debatable); therefore, the decision of the Jefferson County Commission will not be disturbed. See generally Woodard v. City of Decatur,431 So.2d 1173 (Ala. 1983).
Turning to the issues as stated by appellees, we think their first issue has been answered as well as their third issue.
Regarding their second issue, we agree that a property owner may not seek a change in classification of property under a zoning ordinance, or regulation, and at the same time, and in the same proceeding, attack the constitutional validity of such ordinance or regulation. This would be self contradictory. One may not seek relief under an ordinance if it is constitutionally invalid, because the relief sought under it would be unnecessary if that same ordinance did not govern the right to the relief. See City of Homewood v. Caffee,400 So.2d 375 (Ala. 1981). However, we thought it desirable to address the other issues in the hope that by so doing further litigation with the attendant expenditure of attorney and judicial time and manpower, as well as expense, would not be required.
For all the reasons stated, the judgment below is due to be and is hereby affirmed.
AFFIRMED.
FAULKNER, ALMON and ADAMS, JJ., concur.
TORBERT, C.J., concurs in result.
[1] A sketch of the property and that surrounding it is attached as an appendix. *Page 249 
[EDITORS' NOTE: APPENDIX IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 250