Rel: December 16, 2022

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2022-2023

_____

## CR-21-0174

_____

## Deborah R. Tisdale

## v.

## State of Alabama

## Appeal from Covington Circuit Court
## (CC-20-312)

MINOR, Judge.

In this appeal, we consider Deborah Tisdale's arguments (1) that the circuit court should not have admitted during her trial a statement she made to law enforcement and (2) that the circuit court lacked authority to impose a jail sentence on her conviction for failure to bury a

dead animal, see § 3-1-28, Ala. Code 1975. We hold that Tisdale did not preserve the first issue for review and that the circuit court had authority to impose a jail sentence on Tisdale's conviction.

## FACTS[1] AND PROCEDURAL HISTORY

Tisdale was convicted in the Covington District Court of two counts of failure to bury livestock and one count of cruelty to an animal. (C. 47-48.) She appealed her convictions to the Covington Circuit Court for a jury trial.

At trial, the evidence showed that, two days before Christmas in 2019, police responded to Tisdale's home located on Nall Road in Covington County to conduct a welfare check on Tisdale, who had been unreachable for several days. Officers smelled a "foul odor emitting from the residence and the general area," and they obtained a search warrant for Tisdale's residence. (R. 310, 427.)

Outside the residence, officers found horses in troubling conditions, including a black stallion in a cramped trailer and a dead foal in a pen with its mother. Testimony described the pen as so cramped that the

---

[1]Tisdale does not challenge the sufficiency of the evidence, and thus only a brief recitation of the facts is necessary.

mother could not turn around without stepping on her dead foal. (R. 248, 346, 392, 394-95, 467, 489.)

Officers found a dead white horse that was "bloated" and appeared to be "sunk down in the mud," which signified that "the horse had been there for a few days." (R. 246, 259.) The horse was decomposing and was surrounded by feces. Dr. Lynn Hall, a veterinarian, testified that the horse appeared to have "been dead for several days because its head and back and there was a lot of feces behind it, and the head was sunk down into the ground." (R. 482.)

Testifying in her own defense, Tisdale stated that she is a medical doctor and that she rescues animals from "kill pens." (R. 551.) She denied the allegations against her and stated that the white horse was alive on the morning of December 23, 2019.

The jury found Tisdale guilty of one count of failure to bury a dead animal (white mare) and acquitted her of the other two charges. (C. 112; R. 699-700.) The circuit court sentenced Tisdale to 90 days' imprisonment but suspended that sentence and placed Tisdale on 2 years' unsupervised probation. The circuit court also ordered Tisdale to pay a $50 fine, court costs, and a bail-bond fee.

## I. <u>MIRANDA</u> RIGHTS VIOLATION

Tisdale argues that "her rights were violated by the introduction of a recorded statement in which she had clearly invoked her right to counsel after having been given her <u>Miranda [v. Arizona</u>, 384 U.S. 436 (1966),] rights." (Tisdale's brief, p. 1.)  In her statement, Tisdale stated that the horse died "[t]he night before last," (R. 319), and that the recorded statement was "cumulative" and prejudicial. (Tisdale's brief, p. 6.)

At first, Tisdale objected only to the circuit court's admission of her recorded statement that occurred after she had been <u>Mirandized</u>. (R. 622-23.) Later, Tisdale objected to the statement "all together" and argued that "the whole reason for <u>Miranda</u> is to prevent statements like this from coming in when a person is asking for an attorney." (R. 626.) Tisdale then argued that "[i]f the Court decides to let it in, … but I think that we are okay with it starting here and just playing from 000 to 6:42." (R. 626-27.) The circuit court admitted the statement.[2] Later, Tisdale argued: "We think that it needs to be played from the beginning. In fact, the more we

---

[2]In denying Tisdale's objection, the circuit court held that Tisdale's statement was "spontaneously" made. (R. 629.)

talk the more that I am leaning towards asking for the Doctrine of Completeness and playing the whole thing." (R. 634.) Finally, Tisdale argued that "we would ask for the Doctrine of Completeness and play it all." (R. 639.) Tisdale's entire recorded statement was played for the jury.

The record shows that Tisdale abandoned her objection to the admission of the statement and asked for the statement to be admitted in its entirety. Thus, Tisdale preserved nothing for our review. Tisdale also cannot now argue the exact opposite—that the circuit court erred by admitting Tisdale's recorded statement. See Robitaille v. State, 971 So. 2d 43, 59 (Ala. Crim. App. 2005) ("'Under the doctrine of invited error, a defendant cannot by his own voluntary conduct invite error and then seek to profit thereby.'" (quoting Phillips v. State, 527 So. 2d 154, 156 (Ala. 1988))). Thus, because Tisdale withdrew her objection and asked for the entire statement to be played, Tisdale is due no relief.

## II. UNAUTHORIZED SENTENCE

Tisdale argues that her "suspended jail sentence … was not authorized." (Tisdale's brief, p. 1.) Tisdale asserts that the only punishment that the court could impose is a $50 fine under § 3-1-28, Ala. Code 1975:

"All owners or custodians of animals which die or are killed in their possession or custody, other than such as are slaughtered for food, within 24 hours shall cause the bodies of such animals to be burned or buried at least two feet below the surface of the ground. Hogs dying from cholera or any other disease whatsoever shall be burned. No such animal shall be burned or buried sufficiently near a residence or residences as to create a nuisance. Any person violating this section, whether by failure to burn or bury an animal dying or being killed in his possession or by causing the same to be burned in such proximity to a dwelling or in such other way as to become a nuisance <u>shall be guilty of a misdemeanor and, on conviction, shall be fined not more than $50.00.</u>"

(Emphasis added.)

In response, the State cites § 13A-5-4(b):

"The particular classification of each misdemeanor defined in this title is expressly designated in the chapter or article defining it. <u>Any offense defined outside this title which is declared by law to be a misdemeanor without specification as to classification or punishment is punishable as a Class C misdemeanor.</u>"

(Emphasis added.) The State argues that § 13A-5-4(b) applies to § 3-1-28 and thus a violation of § 3-1-28 "is punishable as a Class C misdemeanor" under § 13A-5-2(c), Ala. Code 1975.[3]

---

[3]Section 13A-5-2(c) provides:

"Every person convicted of a misdemeanor … shall be sentenced by the court to:

"(1) Imprisonment for a term authorized by Section 13A-

6

"These principles guide our examination of what a statute means:

"'In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:

"'"'Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"

"'Blue Cross & Blue Shield v. Nielsen, 714 So. 2d 293, 296 (Ala. 1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So. 2d 344, 346 (Ala. 1992)); see also Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n, 589 So. 2d 687, 689 (Ala. 1991); Coastal States Gas Transmission Co. v. Alabama Pub. Serv. Comm'n, 524 So. 2d 357, 360 (Ala. 1988); Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So. 2d 1219, 1223 (Ala. 1984); Dumas Bros. Mfg. Co. v. Southern Guar. Ins. Co., 431 So. 2d 534, 536 (Ala. 1983); Town of Loxley v. Rosinton Water, Sewer, & Fire

5-7; or

"(2) Pay a fine authorized by Section 13A-5-12; or

"(3) Both such imprisonment and fine."

7

> Protection Auth., Inc., 376 So. 2d 705, 708 (Ala.
> 1979). It is true that when looking at a statute we
> might sometimes think that the ramifications of
> the words are inefficient or unusual. However, it is
> our job to say what the law is, not to say what it
> should be. Therefore, only if there is no rational
> way to interpret the words as stated will we look
> beyond those words to determine legislative
> intent. To apply a different policy would turn this
> Court into a legislative body, and doing that, of
> course, would be utterly inconsistent with the
> doctrine of separation of powers. See Ex parte T.B.,
> 698 So. 2d 127, 130 (Ala. 1997).'"

Pack v. State, 331 So. 3d 1179, 1181-82 (Ala. Crim. App. 2021) (quoting

DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc., 729 So. 2d 270, 275-76

(Ala. 1998)).

Tisdale argues that § 13A-5-4(b) does not apply if the offense

defined as a misdemeanor outside Title 13A includes either a

classification or a punishment. Tisdale correctly argues that § 3-2-28

specifies a punishment—a fine of not more than $50. See, e.g., § 15-18-

1(a) ("The only legal punishments, besides removal from office and

disqualification to hold office, are fines, hard labor for the county,

imprisonment in the county jail, imprisonment in the penitentiary, which

includes hard labor for the state, and death."). Thus, Tisdale asserts that

§ 13A-5-4(b) does not apply.

The legality of Tisdale's jail sentence turns on what "or" means in the phrase "without specification as to classification <u>or</u> punishment" in § 13A-5-4(b) (emphasis added). Typically, the word "<u>and</u> combines while <u>or</u> creates alternatives." Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 116 (Thompson/West 2012). As Scalia and Garner caution, however, "with negatives, plurals, and various specific wordings there are nuances."

The phrase at issue illustrates what Scalia and Garner label "the disjunctive negative proof." They offer this hypothetical example:

> "To be eligible for citizenship, you must prove that you have not (1) been convicted of murder; (2) been convicted of manslaughter; or (3) been convicted of embezzlement.
>
> "An applicant proves #3—that he has never been convicted of embezzlement—but fails to prove that he has not been convicted of both murder and manslaughter. Is he eligible? (No.) Is the requirement that he not have done one of these things, or that he have done none? (He must have done none.)"

<u>Id.</u> at 120.

Applying this principle to § 13A-5-4(b), the phrase "without specification as to classification or punishment" means that § 13A-5-4(b) applies to any misdemeanor defined outside Title 13A that does not include a specification as to both classification and punishment. Thus, §

9

13A-5-4(b) applies to a misdemeanor offense outside Title 13A if: (1) the provision includes a punishment but does not classify that offense; (2) the provision classifies that misdemeanor but does not include a punishment; (3) the provision includes neither a classification nor a punishment.

The principle of in pari materia also guides our construction.

> "Statutes are in pari materia where they deal with the same subject. Kelly v. State, 273 Ala. 240, 139 So. 2d 326 [(1962)]. Where statutes are in pari materia they should be construed together to ascertain the meaning and intent of each. City of Birmingham v. Southern Express Co., [164 Ala. 529, 51 So. 159 (Ala. 1909)]. Where possible, statutes should be resolved in favor of each other to form one harmonious plan and give uniformity to the law. Waters v. City of Birmingham, 282 Ala. 104, 209 So. 2d 388 [(1968)]; Walker County v. White, 248 Ala. 53, 26 So. 2d 253 [(1946)]."

League of Women Voters v. Renfro, 292 Ala. 128, 131, 290 So. 2d 167, 169 (1974). See also Scalia & Garner, Reading Law § 39 at 252 ("Statutes in pari materia [dealing with the same subject] are to be interpreted together, as though they were one law.").

Section 13A-1-2(9), Ala. Code 1975, defines "misdemeanor" as "[a]n offense for which a sentence to a term of imprisonment not in excess of one year may be imposed." Section 13A-1-7(b) extends that definition outside Title 13A under certain conditions: "Unless otherwise expressly provided or unless the context otherwise requires, the provisions of this

chapter shall govern the construction of and punishment for any offense defined outside this title and committed after the effective date thereof, as well as the construction and application of any defense to a prosecution for such an offense."

Tisdale's construction of § 3-1-28, however, would create a separate category of misdemeanor conviction for which a sentencing court may impose only a fine, not a term of imprisonment. That construction conflicts with § 13A-1-2(9), in which the very definition of a misdemeanor is the possibility of imprisonment of not more than 12 months. Tisdale's construction also conflicts with § 13A-5-2(c), Ala. Code 1975, which provides as available punishment for a misdemeanor conviction (1) a term of imprisonment, (2) a fine, or (3) both a term of imprisonment and a fine.

Applying the above principles to this case, we conclude that § 13A-5-4(b) applies to § 3-1-28. [4] Thus, Tisdale's conviction under § 3-1-28 is a

---

[4]The Commentary for § 13A-5-4 provides:

"Subsection (a) makes all felonies defined outside the Criminal Code for which no punishment is provided Class C felonies, the lowest category. Subsection (b) similarly deals with misdemeanors. Most existing crimes were covered in Title 13, Alabama Code of 1975, but most were repealed upon

conviction for a Class C misdemeanor. A conviction for a Class C misdemeanor is punishable by a "term of imprisonment in the county jail … not more than three months." § 13A-5-7(a)(3). Although § 13A-5-12(a)(3) provides for a fine of "not more than $500" for a Class C misdemeanor conviction, § 3-1-28 limits that fine to "not more than $50." Finally, under § 15-22-50, Ala. Code 1975, a sentencing court has the authority to "suspend execution of sentence and place on probation any person convicted of a crime in any court exercising criminal jurisdiction."

In sum, the circuit court could sentence Tisdale to up to three months' imprisonment, if it so chose, and, under § 3-1-28, the circuit court had to impose a fine on Tisdale of no more than $50. As noted above, the circuit court sentenced Tisdale to 90 days' imprisonment and a $50 fine. The circuit court suspended the jail sentence and placed Tisdale on two years' unsupervised probation. Thus, Tisdale's sentence is authorized, and she is due no relief.

---

the effective date of the Criminal Code. To the extent that there are some crimes now found outside former Title 13 which have not been subsumed by the Criminal Code and which are not repealed, it is desirable that they be incorporated into the Criminal Code, at least those which specify no particular punishment."

12

The judgment of the circuit court is affirmed.

AFFIRMED.

Kellum and McCool, JJ., concur. Windom, P.J., and Cole, J., concur in the result.