This is an appeal from a final judgment of the Circuit Court of Jefferson County denying the application of the appellants *Page 1027 
(hereinafter the "property owners")[1] for a change of zoning.
The property owners sought a change in zoning of a 2.4-acre parcel of undeveloped land that lies in the southeast quadrant of the intersection of Interstate Highway 65 and West Lakeshore Drive. The parcel lies west of Green Springs Highway and south of West Lakeshore Drive in the unincorporated territory of Jefferson County. Although the county planning staff and the commission member representing this area of the county recommended a change in zoning from "C-P preferred commercial" (a classification permitting office buildings, but not permitting automobile service stations) to "C-1 commercial" (a classification permitting service stations), the Jefferson County Commission denied the application for change. The property owners brought an action in the circuit court to review the decision of the county commission, and, after an extensive hearing, the trial court denied relief. This appeal followed.
Although the interchange at I-65 and West Lakeshore Drive has only recently been completed, it was in the planning stage for many years. In anticipation of the completion of the interchange, West Lakeshore Drive was converted to a fourlane road, with a median. The traffic on West Lakeshore Drive had increased from less than 1,000 vehicles per day to 13,400 per day at the time of the hearing below, with 14,000 per day projected. West Lakeshore Drive is expected to be extended to Bessemer, and major development is expected in the area, much of which is already underway. For example, just west of I-65 and south of West Lakeshore Drive is a Sam's Wholesale Club store and a Wal-Mart store, and warehouses for Bruno's and Parisian's are under construction.
Just south of West Lakeshore Drive, on the east side of Green Springs Highway, a major development known as University Park has been approved by the City of Homewood. This development will include a mix of office buildings, residences, and commercial development, where service stations will be permitted. The new fourlane West Lakeshore Drive was designed with a service road, which lies between the property involved here and the four-lane drive to provide smooth traffic flow.
There was testimony that the subject property is unsuited for development of an office building because the small size of the lot prevents adequate parking and other amenities. One of the property owners testified that he had tried unsuccessfully to develop the site for office use, which its present classification would authorize.
Five experts testified. All of them stated that commercial development of the property as a service station would not have an adverse affect on the area or on traffic at the site. General Henry Graham, a widely respected expert appraiser and developer, testified that he was familiar with the property and that he had made a study and report concerning appropriate development of the site. He stated:
 "Well, I would think that the commercial zoning which would allow a service station is a more appropriate kind of use of that property. The property just cries out to provide a service station before you get into this fast traffic on the interstate so it was my conclusion that a CP zoning for an office building was just infeasible whereas a service station was what that intersection is saying to me is needed there."
He also stated:
 "Our conclusion was if this zoning change was allowed, there would be no diminution in value of the nearby residential properties as a result of it . . . [and] there [would be] no impact on the residential area if this zoning change was allowed. . . . I don't see how that change [the proposed rezoning] is going to adversely affect the neighborhood. I see it being a positive factor as it relates to the public as a whole."
Another expert testified that he had made a study of the intersections along the *Page 1028 
interstate system in Jefferson County, which includes I-59, I-20 and I-65, and that he had found that every intersection with a service road, like the subject property, had a service station except the intersection at West Lakeshore Drive and I-65. He said:
 "West Lakeshore Drive is not a two-lane road, it's not a residential street, it's a major collector road for thousands and thousands of acres of undeveloped property to the west and certainly for the University Park development to the east and that area of town. So I would submit that retail is the most appropriate use in the future for the subject property."
All of the expert witnesses agreed that commercial retail zoning was appropriate for the property. All of the experts, except one, testified that C-1 commercial was the most appropriate classification. There was no testimony that the rezoning would adversely affect the surrounding community.
There are five residences about 350 feet north of West Lakeshore Drive. A stand of evergreen trees acts as a buffer between West Lakeshore Drive and these residences. There was no evidence that rezoning the subject property to permit a service station would adversely affect these residences. In fact, Mr. Robert House, a 15-year veteran city planner and expert, stated:
 "Every now and then you come on a zoning case where the proposed use of a piece of property is actually less intense or [has] less impact than the roadway it's located on. We foresaw this in 1974 with knowing what the volume of traffic West Lakeshore and Green Springs Highway intersection would carry, and that the land would have much more negative impact on the residential area to the north than does the proposed use of any C-1 use on the subject property . . . and I would say that the noise and fumes and dust and vibration and continual twenty-four hour traffic at that intersection, cars and trucks starting and stopping, going up the hill to the new I-65 interchange, is going to far outweigh any impact that might be realized from development of the subject property." (R.T. 310-11.)
It is no longer subject to debate that governmental entities have the authority to zone within the police power. Village ofEuclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114,71 L.Ed. 303 (1926). However, a zoning ordinance may be invalid as applied to a particular parcel of land if the application of the regulation to the land bears no substantial relationship to the objects of the police power. What are the objects of the police power? The promotion of the health, safety, morals, and general welfare of the community. Leary v. Adams, 226 Ala. 472,147 So. 391 (1933). In Hall v. Jefferson County, 450 So.2d 792
(Ala. 1984), this Court said that "property ownership should, and does, bring with it freedom to use one's possession as the owner deems appropriate, subject, of course, to reasonable restraints for the general health, safety or public welfare," and that "Absent the need for such reasonable impediments, the landowner's 'bundle of rights' should remain inviolate." Id. at 796. No evidence has been offered to show that the denial of the application for a zoning change in this case has any substantial relationship to the objects of the police power. The evidence is all to the contrary.
That being the case, we need not advance to the question of whether it is fairly debatable that the general welfare is promoted by the application of the zoning classification in this case. In Byrd Companies, Inc. v. Jefferson County,445 So.2d 239 (Ala. 1983), this court adopted the two standards set out in Hall v. Jefferson County, supra, and cited with approvalDavis v. Sails, 318 So.2d 214 (Fla.App. 1975). Byrd Companies
explained the two rules in the following language:
 "Two other rules of law, which sometimes become confused and intertwined, are the 'substantial relationship rule' and the 'fairly debatable rule.' The substantial relationship rule is a substantive law, and may be simply stated as follows: In order for a zoning ordinance or regulation *Page 1029 
to be valid, it must have some substantial relationship to the promotion of the public health, safety, morals, or general welfare. When correctly applied, this rule is not in any manner modified by the fairly debatable rule. The latter rule, being a rule of procedure or application, may be simply stated as follows: If the application of a zoning classification to a specific parcel of property is reasonably subject to disagreement, that is, if the application is fairly debatable, then the application of the ordinance by the zoning authority should not be disturbed by the courts. Of course, it is always a matter for the court to determine whether a zoning authority acted reasonably or fairly, or whether capriciously or arbitrarily. The fairly debatable rule applies to the application of the ordinance and does not modify the requirement that the ordinance itself and the application thereof must have a reasonable relationship to the health, safety, morals, or general welfare."
445 So.2d at 247.
In this case, the burden was on the zoning authority to demonstrate that the challenged zoning restriction on the owners' use of their property had a substantial relation to a legitimate public purpose, i.e., that the restriction had a substantial relation to the health, safety, morals, or general welfare. The zoning authority did not carry that burden. To the contrary, the undisputed evidence was that a change in zoning would not adversely affect any interest that is a proper concern of the police power. The evidence showed that the proposed rezoning would not increase traffic; would not cause environmental problems; would not adversely affect the value of nearby properties; and would not increase any hazards associated with flooding. The evidence also was that dramatic changes in the neighborhood made the proposed zoning appropriate, inevitable and imminent, and that benefits to the community would result from the proposed rezoning.
Because the zoning authority failed to establish a substantial relationship to a legitimate governmental purpose in denying the application for a change in zoning, we are constrained to reverse the judgment and remand the cause for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.
[1] The property owners are BP Oil Company, Leslie B. Adams, James T. Johnson, Jr., and C. Austin Johnson.