MAIN, Justice.
This is a zoning case. Shelby Land Partners, LLC (“Shelby Land”), and Alabaster Land Company, LLC (“Alabaster Land”), each own a 50% undivided interest in a 19.4-acre parcel of undeveloped real property located within the municipal limits of the City of Alabaster (“the City”). In 2004, at the request of Shelby Land, the property was zoned as a “community business district,” permitting only commercial uses. In 2009, Shelby Land petitioned the City to rezone the land to permit multifamily residential use in order to pursue the development of a low-income apartment complex for senior citizens on the property. The Alabaster City Council (“the City Council”) denied Shelby Land’s rezoning application. Shelby Land and Alabaster Land then brought this action seeking relief from the denial of the rezoning request. The trial court entered a summary judgment in favor of Shelby Land and Alabaster Land and ordered the City and the City Council to rezone the land to permit multifamily residential development. The City and the members of the City Council, who were sued in their official capacities, appeal. We reverse and remand.
I. Facts & Procedural History
In June 2003, the City adopted a community-renewal plan (“the plan”). The plan called for redevelopment of more than 300 acres of underdeveloped or undeveloped land near the intersection of Highway 31 and Interstate 65 at Exit 238 in Alabaster (“the project area”). The 19.4-acre parcel is within the project area. The plan noted that the older homes, mobile homes, and buildings existing in the project area portrayed an image of decay and blight and expressed concern that the blight might spread to adjoining residential areas. In addition to alleviating the perceived blight, the plan sought to encourage commercial development at the project area “in order to increase employment opportunities, promote a diversified economy and expand the City’s tax base.” The plan further sought to improve the safe and efficient flow of traffic through and near the project area. Although the plan indicated the potential for mixed-use development, including residential use, the plan stated that “it is projected that the entire Project Area is best suited for General Business District development and it is the plan to redevelop the entire Project Area as a General Business District.” An attached “proposed land use map” indicated that the entire project area would be zoned “B-3 General Business.” The City Council approved and adopted the plan on June 16,2003.
In furtherance of the plan, the City entered into a redevelopment agreement with Shelby Land. The City agreed that it would acquire certain properties included within the project area that were not already owned by Shelby Land and convey those properties to Shelby Land. In return, Shelby Land agreed to convey a parcel of land to the City to be used as a site for the construction of City facilities. The City also agreed to construct a road, Alabaster Boulevard, through the project area. The agreement recited the City’s aspiration that the redevelopment project would stimulate residential construction and aid in the development of more desirable neighborhoods in the City. The agreement also required that Shelby Land develop the property in conformity with the plan.
In order to implement the plan, it was necessary that the land encompassed by the project area be rezoned from an agri *700 cultural designation to a zoning classification permitting the planned commercial use. In July 2004, Shelby Land applied to the Alabaster Planning Commission (“the planning commission”) to have the entirety of the project area zoned as a B-8 “community business district.” According to Shelby Land, the uniform B-3 zoning classification throughout the project area was selected because, at that time, it was uncertain as to the amount of acreage needed for a planned commercial development. With its application, Shelby Land stated:
“The zoning of the balance of our property to B-3 will allow us to pursue commercial uses consistent with the concept of highest and best use and therefore enable us to maximize the economic potential of the property for us, the City of Alabaster, developers and future property owners. While we have a Master Plan, it is not possible to know what future uses we may have and accordingly we understand it may be necessary to change zoning to lower classifications at a later date.”
The rezoning request went through the City’s standard zoning process, and, after receiving a favorable recommendation from the planning commission, Shelby Land’s request that the entire project area be rezoned as a B-3 community business district was approved by the City Council. Redevelopment of a portion of the project area moved forward, and the developed site now contains a large commercial development known as the Colonial Promenade, which includes a Wal-Mart Super Center; a 14-auditorium movie theater; a Bed, Bath & Beyond home-goods store; a Books-a-Million bookstore; and a number of other retailers and restaurants. The area represents Alabaster’s largest commercial and retail development.
The current commercial development, however, does not encompass the entirety of the project area, and several parcels of property totaling approximately 195 acres remain undeveloped. The undeveloped areas include the 19.4-acre site made the basis of this appeal. That property fronts the eastern side of Alabaster Boulevard. The contiguous parcels also remain undeveloped. The only developed properties fronting Alabaster Boulevard are a restaurant, a hotel, and a church. With the exception of the church constructed at the northern end of Alabaster Boulevard, all properties fronting Alabaster Boulevard remain zoned B-3, and all development within the project area has been commercial.
In November 2009, Shelby Land filed an application for rezoning of the 19.4-acre site. The application sought to rezone the property from a B-3 community business district to a multifamily residential R-6 designation, which allows for multifamily residential uses, such as apartments, condominiums, and assisted-living facilities. The request to rezone the property was made in anticipation of developing a potential apartment community for senior citizens proposed for the 19.4-acre site. The proposed senior apartment complex was to consist of 144 units, which would be limited to residents aged 55 and older. Children were to be excluded from living in the apartments. Along with its application, Shelby Land included the conclusions of a traffic study conducted by a retained consultant. The study indicated that senior apartment communities generate five times less traffic than conventional apartment complexes and thus concluded that the apartment-complex development would have a negligible affect on the public roadways surrounding the proposed development.
On November 24, 2009, the planning commission held a hearing on Shelby Land’s rezoning application. Representa *701 tives from Shelby Land and the developer of the proposed apartment complex made a presentation. In the presentation it was noted that, as a senior apartment community, which prohibited children from residing in the complex, the project would have no impact on the City’s schools; that similar senior citizens’ apartments have negligible crime rates; and that seniors drive 25% less than their younger counterparts, thus limiting the effect of the development on area traffic. It was further stated in the presentation that the developers intended to seek financing for the project from the State of Alabama, which required a 80-year land-use restriction limiting the use of the project to senior housing and also required rent controls.
Alabaster’s City planner, Harry Still, submitted a memorandum to the planning commission recommending that the rezoning request be denied. The memorandum stated:
“Shelby Land Partners LLC is requesting to rezone 19.40 acres from B-3 (Community Business District) to R-6 (Multi-Family District).
“The proposed rezoning will take property that has the potential to create jobs for the community and put revenue back into the economy and create more rooftops, something that our community has more than enough of. More residential development in this area will create traffic that will frustrate the intent of Alabaster Boulevard which is to make the Colonial Promenade and the surrounding commercial property a convenient place to do business, not a convenient place to live.
“Staff recommends against down-zoning any property in this area.”
During the hearing, the planning commission expressed concern with regard to the requirement that the apartment complex remain a low-income senior complex for 80 years. One member generally expressed concern in permitting any type of apartment complex at the proposed location. The planning commission indicated that it did not “want to back off the hope of this property being an all-commercial corridor one day.” Accordingly, the planning commission unanimously voted to recommend that the City Council deny the zoning application.
On January 21, 2010, the City Council heard Shelby Land’s rezoning request. The minutes of the council meeting indicate that representatives of Shelby Land and the developer spoke in favor of the rezoning request. Several members of the public spoke against the rezoning. The City Council voted 4-3 to deny the rezoning request.
On February 2, 2010, Shelby Land and Alabaster Land filed this action against the City and the individual members of the City Council in their official capacities. The complaint sought relief from the City Council’s denial of the rezoning request and specifically sought a judgment declaring that the City’s failure to rezone the property constituted a violation of Shelby Land and Alabaster Land’s constitutional rights; an injunction prohibiting the City from preventing Shelby Land and Alabaster Land from developing the property under an R-6 zoning classification; and an order directing the City to approve Shelby Land’s application to rezone the property to an R-6 classification.
On September 20, 2010, the parties filed cross-motions for a summary judgment. Shelby Land and Alabaster Land argued that they were due a summary judgment because the City Council failed to demonstrate that the reason for the denial of the rezoning request was a substantially related to the health, safety, morals, or general welfare of the citizens of the City. Shelby Land and Alabaster Land further argued *702 that the City’s denial of the rezoning application was arbitrary and capricious. The City, on the other hand, argued that it had a “fairly debatable” reason for denying the rezoning application and that, under the highly deferential standard for judicial review of its zoning decisions, it was due a summary judgment.
In support of their respective motions, the parties submitted evidence and affidavits. Shelby Land and Alabaster Land submitted the affidavit of James Jackson, the managing member of Shelby Land, who testified that the City’s redevelopment agreement with the Shelby Land contemplated that the project area would contain mixed uses, including residential. Shelby Land and Alabaster Land also submitted the affidavit of a former member of the City Council, who testified that the City and the developer had always intended the project area to include mixed uses, including multifamily residential. Shelby Land and Alabaster Land also submitted a proposed-use map that was attached to Shelby Land’s 2008 redevelopment agreement with the City. That map indicated a proposed residential use of the 19.4-acre property. Finally, Shelby Land and Alabaster Land submitted an affidavit of an expert real-estate appraiser, who testified that there appeared to be no current demand for commercial use of the 19.4-acre parcel and that the proposed apartment complex would be a good use of the property.
The City submitted affidavits of the four members of the City Council who voted against the rezoning request. Generally, each indicated that he or she was opposed to zoning a relatively small parcel of the community-business-district area as multifamily residential. They also noted the speculative nature of the proposed senior housing complex and questioned the enforceability of the residential age restriction. They noted that without such restrictions they could not be certain that the apartments would not have an adverse impact on traffic and the City’s schools. Each member testified that he or she listened to Shelby Land’s presentation with an open mind and voted in accordance with what he or she thought was in the best interest of the health, safety, and welfare of the citizens of the City. The City also submitted an affidavit of an expert real-estate appraiser, who testified that the highest and best use of the property in question would be the permissible uses allowed under the current B-3 community-business-district zoning classification.
A hearing on the motions for a summary judgment was held, and on October 31, 2012, the trial court entered a summary judgment in favor of Shelby Land and Alabaster Land and denied the City and the City Council members’ cross-motion for a summary judgment. The trial court held:
“8. Under the City of Alabaster’s zoning ordinance, Plaintiffs’ requested change in the Property zoning classification from B-3 to R-6 is a reasonable request which does not contravene the public interest.
“4. The City’s denial of Plaintiffs’ zoning application, which requested a change in the Property zoning from B-3 to R-6, was arbitrary, capricious, unreasonable and had no relationship to the health, safety, morals, or general welfare of the City of Alabaster, and is contrary to law.
“5. The City’s denial of Plaintiffs’ request to change the zoning of the Property is an arbitrary restriction of the use of the Property; improperly deprives Plaintiffs of their reasonable use of the Property without just compensation or due process of law; and is, therefore, a *703 violation of Plaintiffs’ constitutional rights.
“6. Plaintiffs have the legal right to use the Property pursuant to the R-6 zoning classification.
“7. The City, its elected officials and their successors in office are enjoined and restrained from interfering with or preventing Plaintiffs from using or developing the Property under the R-6 zoning classification.
“8. The City, its elected officials and their successors in office are enjoined and restrained from enforcing or attempting to enforce the present B-3 zoning classification against the Property, and the use of the Property can be no more restrictive than that allowed under the R-6 zoning classification.
“9. Defendants shall approve Plaintiffs’ application to rezone the Property from the B-3 zoning classification to the R-6 zoning classification so that the Plaintiffs may reasonably use the Property, subject to Plaintiffs’ compliance with the other orders, ordinances, rules, and regulations of the City of Alabaster regarding the development, construction, maintenance and operation of the Property.”
Following the denial of the their post-judgment motions, the City and the individual members of the City Council appealed.
II. Standard of Review
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Ala. v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035,1038-39 (Ala.2004).
III. Analysis
“Judicial review of municipal decisions regarding zoning ordinances is severely limited.” H.H.B., L.L.C. v. D & F, L.L.C., 843 So.2d 116, 120 (Ala.2002).
“‘It is settled law that the Alabama Legislature has delegated to municipal legislative bodies, such as city councils, the power and authority to enact zoning ordinances. Section 11-52-76, Ala.Code [1975], provides that “[t]he legislative body of such municipality shall provide for the manner in which such [zoning] regulations and restrictions and the boundaries of such districts shall be determined, established and enforced.” The power to amend, supplement, or change zoning ordinances “as may be necessary” from “time to time” is also delegated to municipal legislative bodies. Id. See BP Oil Co. v. Jefferson County, 571 So.2d 1026, 1028 (Ala.1990), citing Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed.303 (1926).
“ ‘In Homewood Citizens Association v. City of Homewood, 548 So.2d 142 (Ala.1989), this Court discussed the law applicable to a court’s review of a city’s *704 action in zoning cases, stating that “[w]hen a municipal body acts either to adopt or to amend a zoning ordinance, it acts in a legislative capacity and the scope of judicial review of such action is quite restricted.” 548 So.2d at 143. The restrictions on-this Court’s review of the validity of a zoning ordinance have been explained as follows:
“ ‘ “ ‘Zoning is a legislative matter, and, as a general proposition, the exercise of the zoning power should not be subjected to judicial interference unless clearly necessary. In enacting or amending zoning legislation, the local authorities are vested with broad discretion, and, in cases where the validity of a zoning ordinance is fairly debatable, the court cannot substitute its judgment for that of the legislative authority. If there is a rational and justifiable basis for the enactment and it does not violate any state statute or positive constitutional guaranty, the wisdom of the zoning regulation is a matter exclusively for legislative determination.
“ ‘ “ ‘In accordance with these principles, it has been stated that the courts should not interfere with the exercise of the zoning power and hold a zoning enactment invalid, unless the enactment, in whole or in relation to any particular property, is shown to be clearly arbitrary, capricious, or unreasonable, having no substantial relation to the public health, safety, or welfare, or ... plainly contrary to the zoning laws.’ ”
‘“Homewood Citizens Association, 548 So.2d at 143 (quoting 82 Am.Jur.2d Zoning and Planning, 338 (1976)). The Court further stated in Homewood Citizens Association that “[t]he burden is upon the party seeking relief from an ordinance to show that the ordinance was not a fairly debatable issue before the municipal governing body.” 548 So.2d at 144.’ ”
H.H.B., L.L.C., 843 So.2d at 120-21 (quoting American Petroleum Equip. & Constr., Inc. v. Fancher, 708 So.2d 129, 131 (Ala.1997)).
In zoning cases, we have noted that there are two applicable rules: the “substantial relationship rule” and the “fairly debatable rule.” We explained the applicability of these two rules in BP Oil Co. v. Jefferson County, 571 So.2d 1026 (Ala.1990):
“ ‘The substantial relationship rule is a substantive law, and may be simply stated as follows: In order for a zoning ordinance or regulation to be valid, it must have some substantial relationship to the promotion of the public health, safety, morals, or general welfare. When correctly applied, this rule is not in any manner modified by the fairly debatable rule. The latter rule, being a rule of procedure or application, may be simply stated as follows: If the application of a zoning classification to a specific parcel of property is reasonably subject to disagreement, that is, if the application is fairly debatable, then the application of the ordinance by the zoning authority should not be disturbed by the courts. Of course, it is always a matter for the court to determine whether a zoning authority acted reasonably or fairly, or whether capriciously or arbitrarily. The fairly debatable rule applies to the application of the ordinance and does not modify the requirement that the ordinance itself and the application therefore must have a reasonable relationship to the health, safety, morals, or general welfare.’ ”
571 So.2d at 1028-29 (quoting Byrd Cos. v. Jefferson Cnty., 445 So.2d 239, 247 (Ala. *705 1983)). We have further described the “fairly debatable” rule as follows:
“ ‘The “fairly debatable” rule concerns the application of a zoning classification to a specific parcel of property. Byrd Companies v. Jefferson County, 445 So.2d 239, 247 (Ala.1983). “ ‘[Iff the application of a zoning classification to a specific parcel of property is reasonably subject to disagreement, that is, if its application is fairly debatable, then the application of the ordinance by the zoning authority should not be disturbed by the courts.’” Id., quoting Davis v. Sails, 318 So.2d 214 (Fla.Dist.Ct.App.1975). Thus, if the zoning ordinance is “subject to controversy or contention” or “open to question or dispute,” it is “fairly debatable” and should not be disturbed by the courts. Aldridge v. Grund, 293 Ala. 333, 343, 302 So.2d 847, 854 (1974); Cudd v. City of Homewood, 284 Ala. 268, 271, 224 So.2d 625, 628 (1969).’ ”
H.H.B., L.L.C., 843 So.2d at 121 (quoting American Petroleum, 708 So.2d at 131).
Shelby Land and Alabaster Land argue that the judgment of the trial court is due to be affirmed because, they say, the City and the City Council members failed to prove that the denial of Shelby Land’s rezoning application bore a substantial relationship to the health, safety, morals, and general welfare of the City. Thus, they argue that the inquiry ends in their favor, and there is no need to analyze whether the City’s denial of their rezoning request was “fairly debatable.” This misstates the inquiry. Rather, when reviewing a city’s denial of rezoning petition, the court must determine whether the existing zoning classification, in this case a B-3 community business district, is substantively valid and bears a reasonable relationship to the promotion of the health, safety, morals, or general welfare of the community before turning to the “fairly debatable” analysis. See Pollard v. Unus Props., LLC, 902 So.2d 18, 30 (Ala.2004) (See, J., concurring specially). In other words, if the existing zoning classification bears a substantial relationship to the health, safety, morals, and general welfare, the “substantial relationship” test is satisfied.
Moreover, the burden of proving a zoning ordinance invalid rests squarely on the party challenging the ordinance. This is because the passage of a zoning ordinance is a legislative act, which is presumed to be valid and reasonable. Pollard, 902 So.2d at 24. Therefore, a property owner challenging the denial of its rezoning petition on the ground that the existing zoning classification is no longer reasonable bears the burden of clearly demonstrating that the existing classification is no longer valid or reasonable. See, e.g., St. Clair Cnty. Home Builders Ass’n v. City of Pell City, 61 So.3d 992, 1008 (Ala.2010) (“It is ... axiomatic that ‘an ordinance enacted by a local governing body “is presumed reasonable and valid, and that the burden is on the one challenging the ordinance to clearly show its invalidity.” ’ ” (quoting Brown v. Board of Educ. of Montgomery, 863 So.2d 73, 75 (Ala.2003))).
In the present case, the evidence was overwhelming, and apparently undisputed, that the 2004 zoning ordinance, which placed the entirety of the project area within a B-3 zoning classification, was reasonable and substantially related to the general welfare of the community. That zoning ordinance, made at the request of Shelby Land, was adopted in accord with the plan previously approved by the City Council in 2003. The plan provided that a purpose of the redevelopment project was “to increase employment opportunities, promote a diversified economy and expand *706 the City’s tax base.” As such, it was determined that “the entire Project Area is best suited for General Business District development and it is the plan to redevelop the entire Project Area as a General Business District,” and the plan reflected that determination. The record before us does not disclose any new factors suggesting that the B-3 classification is no longer substantively valid, other than the fact that a landowner has presented a reasonable alternative multifamily residential use for certain property now within that B-3 classification. The mere fact that a proposed new zoning classification is reasonable, however, does not itself invalidate a likewise reasonable existing zoning classification. The purposes for which the B-3 zoning classification was adopted in 2004 were, and remain, substantially related to the health, safety, morals, and general welfare of the community. Thus, we conclude that the trial court erred in holding the current B-3 zoning of the property had no relationship to the health, safety, morals, or general welfare of the City.
Nor does the evidence support a conclusion that the City’s denial of the rezoning application was arbitrary or capricious. Shelby Land and Alabaster Land’s chief argument in this regard is that there was no evidence before the trial court indicating that the City Council gave the rezoning application a fair debate. Shelby Land and Alabaster Land contend that the trial court was limited to consideration of the minutes of a meeting of the City Council — a one-paragraph entry describing the request to rezone the property, those speaking in favor and against the rezoning request, a notation of a “lengthy discussion,” and a record of the members of the City Council voting for and against the rezoning request. Shelby Land and Alabaster Land argue that a city council “can only speak through its record minutes,” and, therefore, they assert the court cannot consider ex post facto affidavits of the City Council members or the City and the City Council members’ expert to justify the denial of the rezoning application. Thus, Shelby Land and Alabaster Land argue that, because there is no evidence contained in the minutes of the City Council’s meeting of a debate or the grounds for denying Shelby Land’s application to rezone the property, we are left with no choice but to conclude that the denial of the rezoning application was arbitrary. We disagree.
Zoning ordinances are not validated or invalidated based on the quality of the minutes of a council meeting. Rather, they are invalidated because they lack a “fairly debatable” purpose or application. Moreover, courts are free to consider evidence that was not before the governmental body at the time of the decision, so long as it is relevant to the issues considered by the governmental body when making its decisions.
In the present case, Shelby Land’s rezoning request went before the planning commission, which, after hearing a presentation from Shelby Land, unanimously recommended that the petition be denied on the ground that the planning commission did not “want to back off the hope of this property being an all-commercial corridor one day.” Shelby Land’s petition to rezone the property was then heard by the City Council, which considered Shelby Land’s application and presentation, public comments, and the recommendation of the planning commission. The City Council then denied the rezoning application by a 4-3 vote. The testimony submitted to the trial court indicated that the members of the City Council who voted against the rezoning request were concerned with zoning a relatively small parcel of property located in a business district as multifamily *707 residential and questioned the enforceability of the age-limit restrictions of the proposed senior apartment complex. Given the highly deferential standard we must apply, we cannot say that the City’s decision to deny the application to rezone a portion of the City’s largest commercial area for multifamily residential use was not “fairly debatable,” particularly given the expressed desire to maintain the commercial character of the community business district.
“Although the trial court obviously found reasons to disagree with the city council’s decision, it is not the province of the court to substitute its judgment for that of a legislative body vested with the power to make such decisions.” Pollard, 902 So.2d at 29. As we did in Pollard, we find the following language from Episcopal Foundation of Jefferson County v. Williams, 281 Ala. 363, 202 So.2d 726 (1967), applicable:
“While the court is given the power to review the validity vel non of an ordinance or other legislative act, it is not given the power to review the wisdom or unwisdom, or the rightness or wrongness of laws passed by the legislative power delegated to the City Council or the City of Birmingham, or like bodies....
“ ‘Every intendment is to be made in favor of the zoning ordinance and the matter was largely in the legislative discretion of the municipal authorities.... Here, the city Commission is acting in the exercise of a legislative function and with a wide degree of discretion.’ ...
“In the instant case, the City Council of the City of Birmingham, although without recommendation of the Zoning Advisory Committee, in our judgment, acted within constitutional bounds and did not take arbitrary, unreasonable or unlawful action. The Council had a superior opportunity to know and consider varied conflicting interests involved, to balance the burdens and the benefits, and to consider the general welfare of the area involved. There was procedural compliance with the requirement for a public hearing.
“The courts should be slow to set up their own opinions as against those charged with and in position rightfully to perform such duty. The fact that the complainants (appellees) may suffer some financial loss and depreciation in the value of their property is not a test of the constitutionality of the zoning ordinance; nor is it a test to determine if the zoning ordinance is arbitrary, capricious, inequitable and discriminatory....
“The question is whether the reclassification of [the property at issue] is sound and fair. If the question is fairly debatable, the court will not substitute its judgment for that of the City Council ... in exercise of its legislative power....
“The duties of the local authorities ..., charged with zoning property, are evidently arduous and of a delicate character, requiring sensitive insight and perspicuity as to the public health, safety, morals and general welfare incident to zoning. We cannot say that their judgment is always free from error, but before the courts will interfere, it must be made to appear that such an ordinance passes the bounds of reason and assumes the character of a merely arbitrary fiat.
“We think that men may reasonably differ as to the advisability of a zoning change or in a change affecting zoning districts. We are unwilling in the instant case to substitute our opinion for that of the City Council upon whom the responsibility of weighing all factors de *708 volved, and who had access to full information and acted accordingly. We have no reason to say that the City Coun[cil] did not act with enlightened judgment in consideration of the ordinance here under attack.”
281 Ala. at 367, 202 So.2d at 729-30.
Based on the evidence before us and the “severely limited” judicial review of legislative zoning ordinances, we conclude that the trial court erred in entering a summary judgment in favor of Shelby Land and Alabaster Land.
IV. Conclusion
We reverse the judgment of the trial court, and we remand this cause to the trial court for that court to grant the cross-motion for a summary judgment filed by the City and the members of the City Council.
REVERSED AND REMANDED WITH DIRECTIONS.
STUART, BOLIN, and WISE, JJ., concur.
MURDOCK and SHAW, JJ., concur specially.
MOORE, C.J., and PARKER and BRYAN, JJ., concur in the result.