THOMPSON, Presiding Judge.
*51 The City of Hoover ("Hoover") appeals from a judgment of the Jefferson Circuit Court ("the trial court") in favor of Covenant Bank ("Covenant"). The judgment enjoined Hoover from, among other things, enforcing its zoning ordinance in a manner that prevented a proposed use of certain property.
The record indicates the following. Covenant owns real property located on the corner of Highway 119 and Doug Baker Boulevard in Shelby County ("the property").[1] The property is located within Hoover's geographic boundaries. Covenant entered into a contract to sell the property to High Tide Oil Company ("High Tide") on the condition that Covenant obtain conditional-use approval from Hoover for a gasoline station with a convenience store on the property. The property is zoned as being within a "C-2 Community Business District" pursuant to Article VI, Section 11, of the Zoning Ordinance of Hoover ("the zoning ordinance"). The zoning ordinance contains certain specified conditional permissible uses of the property after approval is obtained from Hoover, including use as a "gasoline service station."
Covenant filed an application to obtain a conditional-use permit to construct a gasoline station on the property at issue. In November 2014, Hoover's Planning and Zoning Commission ("the commission") held a public hearing on Covenant's application. The minutes from the hearing, which were admitted into evidence and are included in the record before this court, indicate that ten owners of nearby homes and businesses spoke in opposition to the application. John Ritchey, who lives in the house directly behind the site of the proposed gasoline station, expressed concern about "the noise and the traffic and the lighting." He also told the commission he was "very concerned with spillage" that will drain onto his property, including the creek on his property. Another homeowner raised concerns about the public-health risks posed by a gasoline station, not just from tank leakage but from small spills that routinely occur when people fill the gasoline tanks of their vehicles. Another person spoke out about the health risks from the exhaust of idling cars and trucks, the smell of gasoline fumes, and the smell of the dumpster that would be located at the gasoline station. A number of people who live and work in the area were concerned about the traffic congestion a gasoline station would bring to the area, environmental concerns, and the risk of an increase in crime. It was pointed out that there were several other gasoline stations within a mile of the proposed site. One man, a quadriplegic, voiced his concerns that, with the increased chances of fire and crime, he would have difficulties protecting himself if something were to happen at the gasoline station. He also talked about the difficulty he would have sleeping because of the increased lighting at the gasoline station. At the close of the hearing, the commission recommended by a vote of four to three that the Hoover City Council ("the city council") approve Covenant's application for the conditional-use permit subject to certain specified restrictions. Those restrictions were acceptable to Covenant.
A city council "work session" was held on January 15, 2015, during which the proposed conditional-use permit was discussed. One of the council members asked *52 Robert House, a member of the commission, whether Hoover had ever granted a conditional-use permit for a gasoline station located as close to a residential lot as the proposed gasoline station was to the house nearest the proposed site in this case. House explained that, although some gasoline stations had been "grandfathered in" in the annexation process, he did not believe that Hoover had approved one so close to a residence.
The city-council members noted that there had been "a lot of opposition" to the proposed gasoline station at the commission meeting. Council members also noted that the combination gasoline station/convenience store would probably apply for a license to sell alcoholic beverages. Again, House was asked whether Hoover had approved such applications for a business 50 feet from a residential neighborhood. House told the council members that there had "not been many."
On January 20, 2015, the city council held a public hearing to consider the conditional-use permit for the proposed gasoline station/convenience store. According to the minutes from the public hearing, which were submitted into evidence and are included in the record on appeal, the attorney for Covenant, who is also representing it on appeal, gave a presentation in which he discussed the zoning ordinance and the uses permitted at the site of the proposed gasoline station. The minutes state that the attorney said that, in his opinion, some of the permitted uses "would be much worse than what [Covenant was] proposing." The attorney noted that the zoning ordinance prohibited a car wash or automobile-repair work, oil changes, and the like at the site. He also described the building as a "typical glass and brick type of convenience store that will dispense gasoline," and he stated that all regulations and requirements pertaining to a gasoline station would be met. The attorney explained that the request for the conditional-use permit for the gasoline station was in compliance with the zoning ordinance and that he knew of no other conditions that would compel the city council to do anything other than grant the permit. No one else spoke in favor of the conditional-use permit.
Two people spoke against granting the permit during the hearing. Don Erwin, who represented the Barber Companies, which owns the shopping center across the street from the proposed gasoline station, provided the city council with a list of objections. Erwin said that the proposed use was too intensive for the area because, he said, it would entail increased traffic, night lighting, gasoline and beer trucks, and similar problems. According to the minutes of the hearing, Erwin also said that Hoover had a "long history" of not locating gasoline stations next to residential areas and that, if the permit were granted, the city council would be going against that practice. He also stated that the Barber Companies could not find anyone in the neighborhood who supported the proposed use, although, he said, there were many who opposed it. Finally, Erwin said that the proposed use was "so inappropriate" that the Barber Companies thought it had to oppose the development even though it had never before come out publicly against a commercial development.
Randy Haddock of the Cahaba River Society also spoke against the proposed gasoline station. He discussed the problem with potential increased runoff of storm water at the site when the site was paved, which could cause flooding problems. After hearing the presentations made during the public hearing, four of the city-council members present voted against granting *53 Covenant's request for a conditional-use permit and one abstained.
On April 8, 2015, Covenant filed a petition in the trial court for a writ of mandamus and a declaratory judgment. Covenant named as respondents Hoover and seven city-council members. The city-council members were later dismissed by consent. On February 26, 2016, Covenant filed its second amended complaint, asserting that Hoover had failed to follow the criteria set out in the zoning ordinance and, among other things, that Hoover's actions were unconstitutional.
At the trial of the matter, Russell Jolly, the vice president of High Tide, testified regarding High Tide's agreement to purchase the property, i.e., the site of the proposed gasoline station, only if Covenant obtained a conditional-use permit from Hoover. Jolly, who held certifications through the Alabama Department of Environmental Management ("ADEM") in relation to the installation and removal of underground gasoline-storage tanks and gasoline-dispensing systems, testified about the numerous required safety mechanisms that would be in place if the sale were completed and if the property were operated as proposed.
Jolly also testified that, before the commission gave its recommendation to grant the conditional-use permit, he met with members of the commission, including House. Jolly said that the commission identified a number of conditions with which Covenant would need to comply to obtain conditional-use approval. Those conditions included: 1) the band on the canopy covering the gasoline dispensers could not be internally illuminated; 2) the canopy sign on the east side of the canopy could not be internally illuminated; 3) neon LED strips or accent lighting could not be permitted on the canopy band; 4) canopy lights that shine down on the premises must be recessed in the canopy; 5) exterior light fixtures could not exceed 16 feet in height and must be designed to cast light down on the premises; 6) internally illuminated wall signs would be prohibited on the south and east sides of the building; 7) the store could not operate between midnight and 6:00 a.m.; 8) a buffer must be supplemented with evergreen vegetation as approved by Hoover's landscape architect; and 9) the store could have no outdoor music. Jolly testified that Covenant agreed to all of the conditions and revised the landscape plan to comply with the conditions before the application for a conditional-use permit was submitted to the city council. Jolly testified that he was never informed of any other conditions that Covenant had to meet to obtain conditional-use approval.
L'Tryce Slade, an expert retained by Covenant, testified that, under the zoning ordinance, a convenience store that did not sell gasoline could be located on the property without the necessity of obtaining conditional-use approval. Slade testified that all such stores must comply with ADEM requirements when selling gasoline. Slade testified that the use of the property proposed by Covenant would have no adverse environmental impact. Slade testified that Covenant's application complied with all of the conditional-use requirements of the zoning ordinance and that "gasoline service station" is listed as a conditional use under Section 12.2(b) of the zoning ordinance. Slade also testified that she could not locate any lighting requirements applicable to the property in the zoning ordinance or the source of some of the other conditions recommended by the commission.
House, who was on the commission, testified before the trial court that he had been a city planner for 40 years and had drafted the Hoover zoning ordinance in *54 1979. He explained that "[c]onditional uses [are] uses which were contemplated by the city as being appropriate in a given zoning district upon further review of a specific site with regard to compatibility" and that "conditional uses are required to go through the same process as rezoning in order for the city to determine the exact location of the property, the site plan characteristics, and the appropriateness of that use for that location." House further explained that the commission makes a recommendation for action to be taken by the city council, after which the commission and the city council hold public hearings to determine whether the use is appropriate in that location, but that the commission's recommendation is not binding on the city council.
House, who testified that he lived near the property, opined that a gasoline service station is not an appropriate use for the property because of the close proximity to residences. He said that the distance between the proposed store and existing residences was 110 feet, and he did not believe that a gasoline station was "appropriate this close to a dwelling." House explained that gasoline stations "by definition are, if not the most, one of the most intense uses of retail or service uses there are. And that is why it is cited as a conditional use in the zoning ordinance." House also said: "It doesn't make sense in any planning approach to put a gas station next to a house when you are trying to employ transitional land uses from the corridor to a residential area."
House went on to say that he believed that locating a gasoline station on the property was not compatible with the neighborhood, office, and commercial uses in the surrounding area. He explained that the incompatibility stemmed primarily from the intensity of the lighting that would be present and, secondarily, that most of the business activity of a gasoline station takes place outside. He also said that, although a gasoline station does not generate traffic, congestion is created because of the high number of vehicles coming in and out of a gasoline station. He cited those concerns, coupled with the long hours of operation of a gasoline station, which would be open until midnight, as reasons why permitting a gasoline station on the property would be "extremely detrimental to the neighboring houses."
House testified that a convenience store with a canopy but without gasoline dispensers could be built on the property without approval from the city council. House testified that there are no written standards regarding lighting requirements for the property but that additional, unwritten standards "with regard to the gasoline service station, would be formulated during approval of a conditional-use process, to look at the site, look at the use and figure out what other standards may be necessary to make it appropriate." House also testified that the city council had approved a conditional-use application for a different gasoline service station near the property but that it was never constructed because of private covenant restrictions.
House also testified that he was concerned with the potential for water-quality degradation because of storm-water runoff in the creek behind the property, but he also testified that potential drainage issues were "satisfactory" before the site plan was submitted to the commission. House also testified that a major roadway was nearby and that petroleum drippings from stopped cars and from cars parked in the shopping-center parking lot across the street from the property could also potentially run into the creek.
On September 12, 2016, the trial court entered a judgment reversing the decision of the city council and ordering the city *55 council to grant Covenant's request for a conditional-use permit to allow the gasoline station to be built, subject to certain conditions enumerated in the judgment primarily regarding the types of outdoor lighting that could be used. In the judgment, the trial court stated that it was applying the deferential standard that, it said, was generally applicable to "legislative decisions of municipal zoning authorities." Under that standard, the trial court wrote,
"the Court must first determine if there is a substantial relationship between the denial and an object of the police powers. Should the Court find that a substantial relationship exists, the Court is due to affirm the decision of the city council of Hoover if the decision is fairly debatable or not arbitrary and capricious. However, before the scheme of fairly debatable is even reached, the zoning authority must show some substantial relationship between its decision and an object of the police powers. Byrd Companies, Inc. v. Jefferson County, 445 So.2d 239 (Ala. 1983). 'That an issue is "debatable" answers but half of the dichotomy. It must also be "fairly" debatable.' Jefferson County v. O'Rorke, 394 So.2d 937, 938 (Ala. 1981)."
The trial court concluded that there was
"no substantial relationship between the denial of Covenant's application for a conditional use and the governmental interests arising from [Hoover's] police powers. Consequently, since [Hoover] can show no substantial relationship between its denial and an object of the police powers, then the question of whether the issue is fairly debatable is not reached."
On October 4, 2016, Hoover filed its notice of appeal to the supreme court. The supreme court transferred the case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
On appeal, Hoover first argues that the trial court misapplied the standard used to determine whether Hoover's classification of the property at issue was substantially related to its police powers.
"Judicial review of municipal decisions regarding zoning ordinances is severely limited. In American Petroleum Equipment & Construction, Inc. v. Fancher, 708 So.2d 129 (Ala. 1997), this Court discussed the standard of review that both the trial court and this Court must apply in reviewing those decisions.
" 'It is settled law that the Alabama Legislature has delegated to municipal legislative bodies, such as city councils, the power and authority to enact zoning ordinances. Section 11-52-76, Ala. Code [1975], provides that "[t]he legislative body of such municipality shall provide for the manner in which such [zoning] regulations and restrictions and the boundaries of such districts shall be determined, established and enforced." The power to amend, supplement, or change zoning ordinances "as may be necessary" from "time to time" is also delegated to municipal legislative bodies. Id. See BP Oil Co. v. Jefferson County, 571 So.2d 1026, 1028 (Ala. 1990), citing Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).
" 'In Homewood Citizens Association v. City of Homewood, 548 So.2d 142 (Ala. 1989), this Court discussed the law applicable to a court's review of a city's action in zoning cases, stating that "[w]hen a municipal body acts either to adopt or to amend a zoning ordinance, it acts in a legislative capacity and the scope of judicial review of such action is quite restricted."
*56 548 So.2d at 143. The restrictions on this Court's review of the validity of a zoning ordinance have been explained as follows:
" ' " 'Zoning is a legislative matter, and, as a general proposition, the exercise of the zoning power should not be subjected to judicial interference unless clearly necessary. In enacting or amending zoning legislation, the local authorities are vested with broad discretion, and, in cases where the validity of a zoning ordinance is fairly debatable, the court cannot substitute its judgment for that of the legislative authority. If there is a rational and justifiable basis for the enactment and it does not violate any state statute or positive constitutional guaranty, the wisdom of the zoning regulation is a matter exclusively for legislative determination.
" ' " 'In accordance with these principles, it has been stated that the courts should not interfere with the exercise of the zoning power and hold a zoning enactment invalid, unless the enactment, in whole or in relation to any particular property, is shown to be clearly arbitrary, capricious, or unreasonable, having no substantial relation to the public health, safety, or welfare, or ... plainly contrary to the zoning laws.' "
" ' Homewood Citizens Association, 548 So.2d at 143 (quoting 82 Am. Jur. 2d Zoning and Planning § 338 (1976) ). The Court further stated in Homewood Citizens Association that "[t]he burden is upon the party seeking relief from an ordinance to show that the ordinance was not a fairly debatable issue before the municipal governing body." 548 So.2d at 144.' "
H.H.B., L.L.C. v. D & F, L.L.C., 843 So.2d 116, 120-21 (Ala. 2002) (quoting American Petroleum Equip. & Constr., Inc. v. Fancher, 708 So.2d 129, 131 (Ala. 1997) ) (emphasis on "severely limited" added; other emphasis added in American Petroleum ).
In City of Alabaster v. Shelby Land Partners, LLC, 148 So.3d 697, 704-05 (Ala. 2014), our supreme court explained the rules to be applied in determining whether a zoning classification and its application are valid in a given case:
"In zoning cases, we have noted that there are two applicable rules: the 'substantial relationship rule' and the 'fairly debatable rule.' We explained the applicability of these two rules in BP Oil Co. v. Jefferson County, 571 So.2d 1026 (Ala. 1990) :
" ' "The substantial relationship rule is a substantive law, and may be simply stated as follows: In order for a zoning ordinance or regulation to be valid, it must have some substantial relationship to the promotion of the public health, safety, morals, or general welfare. When correctly applied, this rule is not in any manner modified by the fairly debatable rule. The latter rule, being a rule of procedure or application, may be simply stated as follows: If the application of a zoning classification to a specific parcel of property is reasonably subject to disagreement, that is, if the application is fairly debatable, then the application of the ordinance by the zoning authority should not be disturbed by the courts. Of course, it is always a matter for the court to determine whether a zoning authority acted reasonably or fairly, or whether capriciously or arbitrarily. The fairly debatable rule applies to the application of the ordinance and does not modify the requirement that the ordinance itself and the application therefore must have a reasonable *57 relationship to the health, safety, morals, or general welfare." '
" 571 So.2d at 1028-29 (quoting Byrd Cos. v. Jefferson Cnty., 445 So.2d 239, 247 (Ala. 1983) ). We have further described the 'fairly debatable' rule as follows:
" ' "The 'fairly debatable' rule concerns the application of a zoning classification to a specific parcel of property. Byrd Companies v. Jefferson County, 445 So.2d 239, 247 (Ala. 1983). ' "[I]f the application of a zoning classification to a specific parcel of property is reasonably subject to disagreement, that is, if its application is fairly debatable, then the application of the ordinance by the zoning authority should not be disturbed by the courts." ' Id., quoting Davis v. Sails, 318 So.2d 214 (Fla. Dist. Ct. App. 1975). Thus, if the zoning ordinance is 'subject to controversy or contention' or 'open to question or dispute,' it is 'fairly debatable' and should not be disturbed by the courts. Aldridge v. Grund, 293 Ala. 333, 343, 302 So.2d 847, 854 (1974) ; Cudd v. City of Homewood, 284 Ala. 268, 271, 224 So.2d 625, 628 (1969)." '
" H.H.B., L.L.C. v. D & F, L.L.C. ], 843 So.2d [116] at 121 [ (Ala. 2002) ] (quoting American Petroleum [Equip. & Constr., Inc. v. Fancher], 708 So.2d [129] at 131 [ (Ala. 1997) ]."
In applying the rules set forth above, the trial court first had to determine whether Hoover's zoning requirement that a conditional-use permit was needed for the construction and operation of a gasoline station in a C-2 community business district is substantively valid and bears a reasonable relation to the promotion of the health, safety, morals, or general welfare of the community. See City of Alabaster, 148 So.3d at 705.
In this case, House testified that a gasoline station is among the most intense uses of retail or service property there is and that, therefore, "that is why it is cited as a conditional use in the zoning ordinance." The evidence demonstrated that the location of a gasoline station involves a number of concerns, including environmental issues, concerns about traffic congestion, storm-water drainage issues, concerns about crime, and the appropriateness of locating a gasoline station so near to homes, which affects the character of a neighborhood. Those concerns clearly bear a substantial relationship to the promotion of the health, safety, morals, and general welfare of the community.
The next step in our review is whether the application of the zoning requirements to the property, i.e., the specific site where the gasoline station was to be built, was reasonably subject to disagreement, that is, if the application was fairly debatable. Our supreme court discussed the application and meaning of the term "fairly debatable" in City of Birmingham v. Morris, 396 So.2d 53, 55 (Ala. 1981) :
"A zoning determination is said to be fairly debatable 'when for any reason it is open to dispute or controversy on grounds that make sense or point to a logical deduction that in no way involves its constitutional validity,' Miami Beach v. Lachman, 71 So.2d 148 (Fla. 1953), or where the evidence provides a basis for a fair difference of opinion as to the application of the determination to particular property. See generally, 1 R. Anderson, American Law of Zoning, § 3.20 (2nd ed. 1977).
"By virtue of this 'fairly debatable' rule, the role of the judiciary in zoning cases is extremely limited and the dimensions of judicial review are narrowly confined. 4 E. Yockley, Zoning Law and Practice § 25-2 (4th ed. 1979); 4 R.
*58 Anderson, American Law of Zoning § 25.26 (2nd ed. 1977). Courts must recognize that zoning is a legislative function committed to the sound discretion of municipal legislative bodies, not to the courts. Waters v. City of Birmingham, 282 Ala. 104, 209 So.2d 388 (1968) ; Marshall v. City of Mobile, 250 Ala. 646, 35 So.2d 553 (1948). As a result, local governing authorities are presumed to have a superior opportunity to know and consider the varied and conflicting interests involved, to balance the burdens and benefits and to consider the general welfare of the area involved. Episcopal Foundation of Jefferson County v. Williams, 281 Ala. 363, 202 So.2d 726 (1967) ; Leary v. Adams, 226 Ala. 472, 147 So. 391 (1933). They, therefore, must of necessity be accorded considerable freedom to exercise discretion not diminished by judicial intrusion. Walls v. City of Guntersville, 253 Ala. 480, 45 So.2d 468 (1950). Nevertheless, this discretion is not unbounded, and local authorities may not, under the guise of legislative power, impose restrictions that arbitrarily and capriciously inhibit the use of private property or the pursuit of lawful activities. When such arbitrary and capricious action is made apparent, a reviewing court will not hesitate to disturb the zoning determination as a clear abuse of discretion."
In this case, the distance between the proposed gasoline station and the residential area is 110 feet. There are no "buffer businesses" that would allow for a gradual increase in the intensity of the use of the property between the residential neighborhood and the gasoline station. As House testified: "It doesn't make sense in any planning approach to put a gas station next to a house when you are trying to employ transitional land uses from the corridor to a residential area." He also testified that he did not believe that Hoover had ever given approval for a gasoline station so close to a residence. People who reside in the neighborhood and other businesses in the neighborhood expressed opposition to the location of the gasoline station. Other than the attorney representing Covenant, which obviously has a vested interest in obtaining the conditional-use permit, no one who spoke at the commission meeting or before the city council favored using the site as a gasoline station. The neighbors expressed concern that the dispensing of gasoline, with its flammable nature, its odor, and its potential to negatively impact the environment, posed a health risk, if not an outright danger, to their neighborhood that is not present at an enterprise that operates only as a convenience store, which could have been constructed on the property without the need for a conditional-use permit. Concerns were also raised regarding traffic congestion, lighting issues, and outdoor noise that accompany the operation of a gasoline station.
Use of the property at issue as a gasoline station is "reasonably subject to disagreement," that is, allowing the conditional use of the property as a gasoline service station is "fairly debatable." Under the standard of review the trial court was to apply, see City of Birmingham and City of Alabaster, supra, the city council is presumed to have a superior opportunity to know and consider the varied and conflicting interests involved in this matter, to balance the burdens and benefits, and to consider the general welfare of the area involved. The city council carried out its mandate and denied the conditional-use permit. Based on the "severe limitations" of its review of this action, the trial court should not have disturbed the city council's decision. By doing so, the trial court improperly substituted its judgment for that of the city council.
*59 For the reasons set forth above, the judgment reversing the city council's decision is itself reversed, and the cause is remanded to the trial court for it to enter a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Pittman, Thomas, and Moore, JJ., concur.
Donaldson, J., dissents, with writing.

The property is more particularly described as: "Lot 1, according to the Survey of Village at Lee Branch, Sector 2, as recorded in Map Book 33, Page 3, in the Probate Office of Shelby County, Alabama."